**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMELIA GOVEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUPPORT PETS LLC, a Florida Company,<br><br>Defendant. | CASE NO. 1:26-cv-04226<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Amelia Goven, by her attorneys alleges upon information and belief, except for allegations pertaining specifically to Plaintiff, which are based on personal knowledge:

## INTRODUCTION

1. Support Pets, LLC ("Defendant" or "Support Pets") is a Florida-based company that sells ESA (emotional support animals) and PSD (psychiatric service dogs) "bundles" of products that purport to provide pet owners with all they need to take their pets "almost anywhere" (the "ESA and PSD Products"). Touting itself as "Your Official ESA and PSD® Provider," these bundles come with an "ESA Letter," which is the documentation that an owner wanting to keep a pet at home may be required to present to a landlord with a "no pets" housing policy. The bundles also come with a "PSD" (psychiatric service dog) card, which purports to allow owners of service dogs trained to perform a service for its owner, to enter into public places that bar dogs from entering its premises. Depending on the bundle, a consumer may receive a host of other items that are also not required under any law applicable to a service dog or emotional support animal (*e.g.* ID cards, certificates, vests, leashes, collars, fast passes, etc.). These bundles sell for prices ranging from $99 to $499.

2. Defendant's dirty little secret is that ***none*** of the documentation or paraphernalia it sells is legally required for service dogs to enter public places. Moreover, while the law does recognize an "ESA Letter" that allows for a pet to live in housing with a "no pets" policy, Defendant does not follow the protocol required for the ESA Letter it sells to be legally valid.

3. Defendant markets and sells these products through social platforms like Instagram and its website where consumers are invited to "Qualify" or "Register" their pets by completing an online questionnaire and selecting from several package options. In connection with those sales, Defendant represents that its products are reviewed and approved by "a board-certified medical doctor" and represents that this documentation is official and legally meaningful. Defendant further drives its deceptive conduct by calling itself an Official ESA and PSD Provider throughout its website. However, no government registry exists for service dogs or emotional support animals. Also, no federal law requires a consumer to purchase any type of registration, ID card, vest, certificate, or similar privately issued documentation from a private company in order to obtain rights relating to a service dog or emotional support animal.

4. The use of service dogs and emotional support animals are governed by two federal laws. The Americans with Disabilities Act ("ADA") governs the rights of individuals with disabilities to be accompanied by service dogs in places of public accommodation. Under the ADA, no registration, certification, vest or ID card is required, and registration documents purchased online from vendors like Defendant do not confer rights under the ADA.

5. The Fair Housing Act ("FHA"), enforced by the U.S. Department of Housing and Urban Development ("HUD"), governs the rights of individuals with disabilities to seek reasonable accommodations for emotional support animals in housing. Although a housing provider may in some circumstances request reliable documentation of a disability-related need for the animal, no registration, ID card, vest, certificate or privately issued "official" designation from Defendant is legally required in order to assert rights under the FHA. The only document recognized by the FHA, an ESA Letter, requires that a licensed mental health professional issue the letter ***but only***

after (i) having diagnosed the pet owner with a mental or emotional disability and (ii) having concluded that the animal provides a person some type of disability-related support or benefit. As detailed below, the process utilized by Defendant to vet whether consumers qualify for an ESA Letter is incapable of determining whether that consumer meets the qualifications necessary for the Letter to be valid.

6. Thus, Defendant is misleading consumers into believing that its "Official ESA and PSD" products are official, necessary and legally meaningful, when in fact those products are not required by law and do not independently create or establish any legal rights. If Defendant described the ESA and PSD Products for what they are, privately branded documentation and accessories with no independent legal significance, Defendant would likely be unable to sell them and/or would not be able to charge the prices it does for them.

7. Defendant's material misrepresentations relating to its "Official ESA and PSD" products have caused Plaintiff and the Class (as defined below) members to sustain damages by purchasing documentation and products they believed were official and legally meaningful when, in fact, they are not.

## JURISDICTION AND VENUE

8. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

9. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]"

10. The aggregate amount in controversy is at least $5,000,000.

11. Minimal diversity is met because Plaintiff is a citizen of New York and Defendant is a citizen of Florida.

12. Venue is proper because Plaintiff and many Class members reside in this District and Defendant does business in this District and State.

13. A substantial part of events and omissions giving rise to the claims occurred in this District.

14. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

## CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

16. The proposed class is defined as:

> All persons who purchased ESA and PSD Products from Defendant within the United States during the applicable statute of limitations and through class certification and trial (the "Class").

17. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

18. Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

19. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records.

20. Plaintiff's claims are typical of the claims of the Class in that they, like all Class members, overpaid for the ESA and PSD Products or would not have purchased them but for

Defendant's deceptive conduct.

21. Plaintiff, like all Class members, has been damaged by Defendant's misconduct in that she overpaid for the ESA and PSD Products or would not have purchased them but for Defendant's deceptive conduct. Furthermore, the factual basis of Defendant's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

22. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

23. Among the questions of law and fact common to the Class are whether Defendant:

a. Deceived consumers by misrepresenting that its "Official ESA and PSD" products are legally required and officially recognized in obtaining rights related to service dogs or emotional support animals, when in fact those products were not required by law and did not create or establish legal rights;

b. Deceived consumers into believing that the ESA Letters it sells are validly issued;

c. Overcharged consumers for ESA and PSD Products that have no legal value and that no federal or state law requires consumers to purchase;

d. Violated New York consumer protection law and

e. Whether Plaintiff and the Class were damaged by Defendant's conduct and, if so, the proper measure of damages.

24. Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate

representative and will fairly and adequately protect the interests of the Class.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. Moreover, given that the "sale" of ESA and PSD Products were carried out in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

26. Even if the Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## PARTIES

27. Plaintiff Goven is a citizen of New York, New York in New York County.

28. Defendant Support Pets, LLC is a Florida limited liability company with a principal place of business in Miami, Florida, and is a citizen of Florida.

29. During the relevant statutes of limitations, Plaintiff purchased the ESA and PSD Products within this District for use in reliance on the representations that its "Official ESA and

PSD" products were officially recognized, legally meaningful and would provide legally significant documentation relating to Plaintiff and her pet. Despite Defendant's representations, the ESA and PSD Products Plaintiff purchased did not independently create or establish any legal rights.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

30. Through its website at www.supportpets.com, consumers can purchase ESA and PSD Products by completing an online questionnaire and selecting from several package options. Defendant's website is accessible from any smartphone, computer or tablet. The first thing a consumer sees when visiting Defendant's website is the following:




31. After clicking on "Qualify," the consumer is directed to Defendant's online questionnaire, which Defendant represents is reviewed by "a board-certified medical doctor." The questionnaire asks consumers a series of leading, softball questions that almost any pet owner would answer favorably, such as "Do you ever feel sad when you're away from your dog?" and "Does your dog help melt your stress away?" as shown below:













32. Embedded within the questionnaire, as shown below, Defendant also presents consumers with marketing statements regarding the legal significance and utility of the ESA and PSD Products they are purchasing.










33. During the questionnaire, as shown below, Defendant further tells consumers that "[t]he U.S. Government is trying to change the ESA laws that will make it harder and more costly to get approved," and instructs consumers to "[g]et your ESA now before the law changes."




34. By making the above representation during the questionnaire process, Defendant creates urgency and encourages consumers to complete the purchase before these benefits are either modified or repealed. However, upon information and belief, the changes being made to laws relating to service dogs and emotional support animals are not sweeping as Defendant implies but, instead, are incremental changes meant to curb fraudulent businesses like that run by Defendant.

35. After completing the questionnaire, the consumer is directed to a pricing page where Defendant offers three tiers of "Fully Legal" ESA and PSD Products: an "Essentials Bundle" for $99, a "Signature Bundle" for $199, and a "Platinum Bundle" for $499. What consumers see is the following:




36. All of the above representations are further cemented as "official" and legal by Defendant's representation that it is, "Your Official ESA and PSD Provider," when in fact, they have not been authorized by any governmental body as such.




37. For dog owners with service dogs, Defendant sells a PSD bundle that comes with "The Official Service Dog Leash," "The Official Service Dog Vest," and "The Official Service Dog Card," none of which are required for a service dog to enter public accommodations.

38. Furthermore, as shown below, the Service Dog Card displays what appear to be government seals (including one with an eagle) further driving the messaging that the card is

"official" because it was issued by a governmental entity.




39. To purchase the PSD items shown above, all dog owners have to do is provide a name, address, payment information and the dog's vest size. Incredibly, Defendant does not ask the only information legally required to establish that a dog is a "service dog:" whether it has been trained to perform specific tasks to assist its owner. Yet Defendant is well-aware of this requirement as shown in the screenshot below of its website.




40. Reasonable consumers will expect that Defendant is using the words "Qualify" and "Official" throughout the website in the same manner as those words are used, and understood, by the hundreds of millions of people throughout the world that speak English; that is, to "Qualify" means to "have the legal right to have or do something because of the situation you are in, or to cause someone to have such a right",[1] and "Official" means, "agreed to or arranged by people in positions of authority."[2]

41. A consumer told they can "Qualify" for an "Official ESA or PSD" product will therefore understand that the resulting documentation is official and legally meaningful. However, this is not the case.

42. First, there is no government registry for service dogs or emotional support animals. Second, no federal law requires a consumer to purchase any registration, letter, ID card, vest, certificate or any other documentation from a private company, or government agency, in order to legally establish a dog as a 'service dog' or a pet as an 'emotional support animal.'" To add insult to injury, Defendant also sells an "ESA FastPass." Reasonable consumers will likely interpret that

---

[1] Qualify Definition, https://dictionary.cambridge.org/us/dictionary/english/qualify (last visited May 20, 2026).
[2] Official Definition, https://dictionary.cambridge.org/us/dictionary/english/official (last visited May 20, 2026).

this product would allow them to somehow skip a line at the airport or some other public space if traveling with an emotional support animal; however, this "FastPass" provides no such benefit. Instead, it only allows consumers to show proof of ESA status from their Apple Wallet or similar apps; hardly a feature worth paying for especially since proof of ESA status is provided only once at the outset of a landlord/tenant relationship. Also, proof that a pet qualifies as an Emotional Support Animal is not provided to a landlord via a phone app but is provided via a letter signed by a licensed medical professional on the professional's letterhead.

43. With respect to service dogs, the ADA provides that individuals with disabilities can be accompanied by a service animal in places of public accommodation. Under the ADA, a service dog must be trained to do work or perform tasks for the benefit of an individual with a disability, which Defendant knows all too well. The ADA does not require registration, certification or documentation of any kind. In fact, the U.S. Department of Justice has stated that online service dog registration documents do not convey rights under the ADA[3].

44. The FHA governs the rights of individuals with disabilities to keep emotional support animals in housing that would otherwise prohibit pets. Under the FHA, a tenant with a disability may request that a housing provider make a reasonable accommodation to a "no pets" policy to permit the emotional support animal to live there. To support that request, a tenant may provide documentation from a licensed health care professional, qualified to make such a diagnosis, confirming that the tenant has a disability-related need for the animal. This is the only type of documentation that a landlord cannot reject. No ID card, vest, certificate, registration or privately issued "official" status from Defendant is required under the FHA.[4]

45. Despite charging consumers between $99 and $499 for products it markets as "Official," and despite representing that its documentation is reviewed and approved by "a board-certified medical doctor," Defendant's "Official ESA and PSD" products do not independently

---

[3] https://www.ada.gov/topics/service-animals/ (last visited May 20, 2026)

[4] https://www.hud.gov/helping-americans/assistance-animals (last visited May 20, 2026)

create or establish any legal rights. Moreover, Defendant will be hard-pressed to prove that its purported "certified medical doctor," without ever speaking to the applicant either in person or via a video call and relying solely on a self-serving questionnaire, can diagnose a consumer with a mental health condition requiring the companionship of an emotional support animal.

46. In fact, on January 28, 2020, the U.S. Department of Housing and Urban Development released Notice FHEO-2020-01 (also known as the "Assistance Animals Notice") that called into question the legality of businesses like that of Defendant. In a fact sheet issued alongside the Assistance Animals Notice, HUD warned as follows:

> HUD has heard from housing providers, persons with disabilities, and other groups and individuals who are concerned about commercially available documentation from the internet. The guidance explains that, in HUD's experience, documentation from websites that sell certificates, registrations, and licensing documents and animal gear for animals to anyone who answers certain questions or participates in a short interview and pays a fee is not sufficient to reliably establish that an individual has a non-observable disability or disability-related need for an assistance animal.

*See* Fact Sheet On HUD's Assistance Animals Notice, at p. 4 (https://www.hud.gov/sites/dfiles/PA/documents/AsstAnimalsGuidFS1-24-20.pdf) (last visited May 20, 2026).

47. Though some consumers may never attempt to exercise the rights Defendant claims to provide because they may never face a housing dispute, never try to bring their pet into a business or simply never discover that their documentation has no independent legal effect, all consumers have nonetheless overpaid for the ESA and PSD Products or purchased products they never would have purchased but for Defendant's deceptive conduct. The reason is the same regardless of whether a consumer attempts to use the documentation: no law requires consumers to purchase Defendant's "Official ESA and PSD" products in the first place and no law gives it any effect once purchased.

48. Defendant has sold more ESA and PSD Products, and at substantially higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

49. Consumers' belief that Defendant's "Official ESA and PSD" products carry genuine legal significance has a material bearing on price and consumer acceptance of those products because consumers are willing to pay substantially more for documentation they believe is official and legally meaningful than they would pay for paperwork and accessories that no law requires or recognizes.

50. The value of the ESA and PSD Products that Plaintiff and the Class members purchased was materially less than its value as represented by Defendant and, arguably, completely worthless.

51. Had Plaintiff and the Class members known the truth, they would not have bought the ESA and PSD Products from Defendant or would have paid substantially less for them.

**FED. R. CIV. P. 9(b) ALLEGATIONS**

52. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

53. WHO: Defendant made material misrepresentations and/or omissions of fact in its labeling and marketing of the ESA and PSD Products as to demonstrate that the ESA Letter was validly issued and that the PSD Products were required for service dogs to enter public accommodations.

54. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the ESA Letter they purchased was validly issued and that the PSD Product is required for a service dog to enter public accommodations. Defendant knew or should have known this information is material to the reasonable consumer and impacts the purchasing decision, and yet it omits its ESA Letter is not validly issued because the issuing mental health professional is basing its decision on a questionnaire, versus a one-on-one session with the party applying for it, and the PSD Products

are not necessary for a service dog to enter into a public accommodation.

55. WHEN: Defendant made material misrepresentations and/or omissions detailed herein continuously throughout the applicable Class period.

56. WHERE: Defendant's material misrepresentations and/or omissions about the ESA and PSD Products were made on its website and on social media platforms.

57. HOW: Defendant made written misrepresentations and/or failed to disclose material facts about the true nature of the ESA and PSD Products in that the ESA Letters are not validly issued and that the PSD Products are not required for a service dog to enter a public accommodation.

58. WHY: Defendant engaged in the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay for the ESA and PSD Products. Defendant profited by selling the ESA and PSD Products likely to thousands of consumers.

59. As a result of the false and misleading representations, the ESA and PSD Products are sold at a premium price, compared to what consumers would pay for documentation accurately represented.

## CLAIMS

## FIRST CLAIM

## VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and the New York Class members)**

60. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

62. Defendant's conduct alleged herein constitutes recurring, "unlawful" deceptive acts

and practices in violation of GBL § 349, and as such, Plaintiff and the Class members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing and promoting ESA and PSD Products.

63. Defendant misleadingly, inaccurately and deceptively represented that the ESA and PSD Products it sold to Plaintiff and the Class members were "Official" and legally meaningful, when in fact Defendant knows that no applicable law or regulation renders its ESA and PSD products "Official" and that its ESA and PSD Products do not independently create or establish legal rights.

64. Defendant's improper consumer-oriented conduct—including the labeling and advertising of the ESA and PSD Products —is misleading in a material way in that it, among other things, induced Plaintiff and the Class members to purchase and pay a premium for the ESA and PSD Products or to purchase the ESA and PSD Products when they otherwise would not have had done so had they known those products did not independently create or establish legal rights.

65. Defendant made the untrue or misleading statements and representations willfully, wantonly and with reckless disregard for the truth.

66. Plaintiff and the Class members have been injured inasmuch as they, at a minimum, paid a premium for the ESA and PSD Products due to Defendant's representations. Accordingly, Plaintiff and the Class members received less than what they bargained or paid for.

67. Defendant's advertising and ESA and PSD Products' packaging and labeling induced Plaintiff and the Class members to buy the ESA and PSD Products and to pay a premium price for it.

68. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of GBL §349(a) and Plaintiff and the Class have been damaged thereby.

69. As a result of Defendant's recurring "unlawful" deceptive acts and practices,

Plaintiff and the Class members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, as well as interest on those amounts, and attorneys' fees and costs.

70. Plaintiff and the Class members seek statutory damages under GBL § 349 of $50 per unit purchased.

71. Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant from continuing to employ the unlawful acts and practices alleged herein. If the Court does not restrain Defendant from engaging in these acts and practices in the future, Plaintiff and the Class members will be harmed in that they will continue to believe they are buying the ESA and PSD Products that are legally required and officially recognized when, in fact, the ESA and PSD Products confer no legal rights whatsoever.

**SECOND CLAIM**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Class members)**

72. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

73. N.Y. Gen. Bus. Law § 350 ("GBL § 350") provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

74. GBL § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

75. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning the ESA and PSD Products.

76. Plaintiff and the Class members have been injured inasmuch as they relied upon the labeling, packaging and advertising, and because of that paid a premium for the ESA and PSD Products. Accordingly, Plaintiff and the Class members received less than what they bargained or paid for.

77. Defendant's advertising, packaging and product labeling induced Plaintiff and the Class members to buy the ESA and PSD Products.

78. Defendant made the untrue and misleading statements and representations willfully, wantonly and with reckless disregard for the truth.

79. Defendant violated GBL § 350 by representing that the ESA and PSD Products it sold to Plaintiff and the Class members had been "Official" and, as such, that they would provide legally meaningful documentation, when in fact Defendant knows that its "Official ESA" designation is false and its ESA and PSD Products do not independently create or establish legal rights.

80. Defendant's conduct constitutes multiple, separate violations of GBL § 350.

81. Defendant made the material misrepresentations described in this Complaint on Defendant's website at: https://www.supportpets.com.

82. Defendant's material misrepresentations were substantially uniform in content, presentation and impact upon consumers at large. Moreover, all consumers purchasing the ESA and PSD Products were and continue to be exposed to Defendant's material misrepresentations.

83. As a result of Defendant's recurring "unlawful" deceptive acts and practices, Plaintiff and the Class members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, as well as interest on those amounts, and attorneys' fees and costs.

84. Plaintiff and the Class members seek statutory damages under GBL § 350 of $500

per unit purchased.

85. Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant from continuing to employ the unlawful acts and practices alleged herein. If the Court does not restrain Defendant from engaging in these acts and practices in the future, Plaintiff and the Class members will be harmed in that they will continue to believe they are buying ESA and PSD Products that are official and legally meaningful when, in fact, Defendant's ESA and PSD Products do not independently create or establish legal rights.

## THIRD CLAIM FOR RELIEF
## FRAUD
**(On Behalf of Plaintiff, the Nationwide Class and the New York Class)**

86. Plaintiff reasserts the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87. Plaintiff brings this count against Defendant on behalf of members of the Nationwide Class and the New York Class. As described herein, Defendant knowingly made material misrepresentations regarding the ESA and PSD Products in its marketing and advertising materials, and on its website.

88. Defendant made these material misrepresentations in order to induce Plaintiff and Class members to purchase the ESA and PSD Products. Among other representations and omissions, Defendant repeatedly advertised the ESA and PSD Products on its website alongside representations that the ESA Letter would be validly issued and that PSD Products were required for service dogs to gain access to public places that do not allow dogs, however, neither of these representations are true.

89. Defendant failed to disclose that the ESA Letter has no legal force because it was not issued in the manner required by applicable law and because the PSD Products are not required for a service dog to enter public places that prohibit dogs from entering.

90. The false misrepresentations made by Defendant regarding the ESA and PSD Products, upon which Plaintiff and Class members reasonably and justifiably relied, were material

and were intended to induce, and did actually induce, Plaintiff and Class members to purchase the ESA and PSD Products.

91. Had Plaintiff known the truth about the ESA and PSD Products, she would not have purchased the Products or would have paid much less for them.

**FOURTH CLAIM**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff, the Nationwide Class and the New York Class)**

73. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74. Plaintiff, on behalf of herself and the Class members, brings a claim for unjust enrichment.

75. Defendant's conduct violated, among other things, state and federal law by advertising, marketing and selling the ESA and PSD Products while misrepresenting and omitting material facts.

76. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling the ESA and PSD Products at the expense of, and to the detriment or impoverishment of, Plaintiff and the Class members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity and good conscience.

77. Plaintiff and the Class members conferred significant financial benefits and paid substantial compensation to Defendant for the ESA and PSD Products, which were not as Defendant represented it to be.

78. Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and the Class members' purchases (or overpayments)

of worthless products.

79. Plaintiff and the Class members seek disgorgement of all profits resulting from such purchased products and/or overpayments, and establishment of a constructive trust from which Plaintiff and the Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. declaring that Defendant has committed the violations of law alleged herein;

D. providing for any and all injunctive relief the Court deems appropriate;

E. awarding monetary damages, including but not limited to any statutory, compensatory, incidental or consequential damages in an amount that the Court or jury will determine in accordance with applicable law;

F. providing for any and all equitable monetary relief the Court deems appropriate;

G. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

H. awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

I. awarding pre- and post-judgment interest to the extent the law allows and

J. providing such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 20, 2026

Respectfully submitted,

**REESE LLP**

*/s/ Carlos F. Ramirez*
Carlos F. Ramirez
*cramirez@reesellp.com*
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025-7524
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Scott E. Silberfein
*silberfeins@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (800) 552-0265

*Counsel for Plaintiff*
*and the Proposed Class*