## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMELIA GOVEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUPPORT PETS LLC, a Florida Company,<br><br>Defendant. | Case No. 1:26-cv-04226 |

## DEFENDANT SUPPORT PETS, LLC'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

# Table of Contents

TABLE OF AUTHORITIES ................................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................................1

RELEVANT BACKGROUND .........................................................................................................2

LEGAL STANDARD ......................................................................................................................7

ARGUMENT...................................................................................................................................9

    I.       PLAINITFF'S CLAIMS MUST BE SUBMITTED TO BINDING ARBITRATION..............9

      A.  The Arbitrator, Not the Court, Should Determine Arbitrability................................................9

      B.  Even if the Court Reaches Questions of Arbitrability, It Must Compel Arbitration.............10

       1. The FAA Applies ...............................................................................................................10

       2. Plaintiff Agreed to Arbitrate Claims Against Support Pets.................................................11

        a. A Valid and Enforceable Agreement Exists. ...................................................................13

        b. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement ......................15

        c. The Arbitration Agreement is Presumed Valid and Enforceable ................................17

CONCLUSION ..............................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Addit, LLC v. Hengesbach*,
 341 So.3d 362 (Fla. 2d DCA 2022) ...................................................................21

*Allied-Bruce Terminix Cos. v. Dobson*,
 513 U.S. 265 (1995) .........................................................................................15

*Barrios-Contreras v. Big Fish Ent. LLC*,
 2026 U.S. Dist. LEXIS 45995 (S.D.N.Y. Mar. 6, 2026)....................................19

*Beattie v. Credit One* Bank,
 2016 U.S. Dist. LEXIS 104456 (N.D.N.Y. Aug. 6, 2019)..................................23

*Bensadoun v. Jobe-Riat*,
 316 F.3d 171 (2d Cir. 2003)..............................................................................11

*Berkson v. GOGO LLC*,
 97 F.Supp.3d 359 (E.D.N.Y. 2015)...................................................................17

*Brea Sarasota, LLC v. Bickel,*
 95 So.3d 1015 (Fla. 4th DCA 2012) ..................................................................22

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
 346 F.3d 360 (2d Cir. 2003)..............................................................................15

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
 58 F.3d 16 (2d Cir. 1995)..................................................................................19

*Compass Productions Int'l LLC v. Charter Commc'ns, Inc.*,
 2023 U.S. App. LEXIS 5264 (2d Cir. Mar. 6, 2023) ........................................17

*Daly v. Citigroup, Inc.*,
 939 F.3d 415 (2d Cir. 2019)..............................................................................14

*David L. Threlkeld & Co Inc. v. Metallgesellschaft Ltd.* (London),
 923 F.2d 245 (2d Cir. 1991)..............................................................................12

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
 6 F.4h 308 (2d Cir. 2021)..................................................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985). .........................................................................................11

*Diaz v. Wanrong Trading Corp.*,
  810 F. Supp. 3d 379 (E.D.N.Y. 2025)......................................................................................17

*Doctor's Assocs., Inc. v. Alemayehu*,
  934 F.3d 245 (2d Cir. 2019).....................................................................................................17

*Domer v. Menard, Inc.*,
  116 F.4th 686 (7th Cir. 2024)...................................................................................................16

*Fridman v. 1-800 Contacts, Inc.*,
  554 F.Supp.3d 1252 (S.D. Fla. 2021).......................................................................................17

*Gillman v. Chase Manhattan Bank*,
  534 N.E.2d 824 (N.Y. 1988).....................................................................................................21

*Giovo v. McDonald*,
  791 So. 2d 38 (Fla. 2d DCA 2001) ..........................................................................................17

*Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*,
  2023 U.S. Dist. LEXIS 28569 (S.D.N.Y. Feb. 21, 2023) .........................................................14

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ...................................................................................................................13

*Kai Peng v. Uber Techs.*,
  237 F.Supp.3d 36 (E.D.N.Y. 2017)...........................................................................................22

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
  174 F.3d 907 (1999)..................................................................................................................11

*King v. Fox*,
  851 N.E.2d 1184 (N.Y. 2006) ...................................................................................................21

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
  252 F.3d 218 (2d Cir. 2001)......................................................................................................19

*Martin v. Lens.com, Inc.*,
  2024 U.S. Dist. LEXIS 209632 (S.D. Fla. Nov. 18, 2024).........................................................16

*MetroPCS Commc'ns, Inc. v. Porter*,
   273 So. 3d 1025 (Fla. 3d DCA 2018) ......................................................................................15

*Meyer v. Uber Technologies, Inc.*,
  868 F.3d 66 (2d Cir. 2017)........................................................................................................12

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..................................................................................................................11

*Nicosia v. Amazon.com,*
384 F.Supp.3d 254 (E.D.N.Y. 2019) ....................................................................................16

*Rent-A-Center, W., Inc. v. Jackson*,
130 S.Ct. 2772 (2010) .........................................................................................................13

*Ross v. Finzer & Atallah*,
2025 U.S. Dist. LEXIS 200325 (S.D.N.Y. Oct. 8, 2025) ....................................................15

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)..................................................................................................11

*Schurr v. Austin Galleries of Ill., Inc.*,
719 F.2d 571 (2d Cir. 1983)..................................................................................................17

*Segui v. Solar Mosaic, LLC*,
2026 U.S. Dist. LEXIS 132586 (S.D.N.Y. Jun. 15, 2026).................................................12

*Shearson/Am. Exp., Inc. v. McMahon*,
482 U.S. 220 (1987) ............................................................................................................21

*Torres v. United Healthcare Servs.*,
920 F.Supp.2d 368 (E.D.N.Y. 2013)...................................................................................21

*Velez v. Credit One Bank*,
2016 U.S. Dist. LEXIS 8782 (E.D.N.Y. Jan. 25, 2016)....................................................23

*Vision Palm Springs, LLLP v. Michael Anthony Co.*,
272 So. 3d 441 (Fla. 3d DCA 2019) ...................................................................................17

*Vitacost.com, Inc. v. McCants*,
210 So. 3d 761 (Fla. 4th DCA 2017) ...................................................................................15

*VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*,
912 So.2d 34 (Fla. 4th DCA 2005) ......................................................................................23

*Winter v. Union Air Transp. GMBH*,
650 So.2d 45 (Fla. 3d DCA 1994) .......................................................................................23

*WTA Tour, Inc. v. Super Slam Ltd.*,
339 F. Supp. 3d 390 (S.D.N.Y. 2018)..................................................................................12

v

*Zachman v. Hudson Valley Federal Credit Union*,
   49 F.4th 95 (2d Cir. 2022)..................................................................................................12

## Statutes

15 U.S.C. § 7001(a)(1)............................................................................................................14
9 U.S.C. § 3.....................................................................................................................11, 14
9 U.S.C. § 4.....................................................................................................................11, 14

## PRELIMINARY STATEMENT

On numerous occasions over the last several months, Plaintiff Amelia Goven ("Plaintiff") visited and meaningfully interacted with Support Pets' website, www.supportpets.com (the "Website"). As a consequence of those visits, Goven assented to the Website's Terms and Conditions (the "Terms") which contain, among other terms, a dispute resolution provision requiring Plaintiff to arbitrate on an individual basis the claims she has purported to bring against Support Pets.

Throughout the Complaint, Plaintiff admits that she purchased products and services from the Website. The process both leading up to the consummation of that purchase as well as the subsequent interactions with the Website in which Plaintiff provided personally identifiable contact information to receive outreach and communications related to the purchase, ultimately created a valid and enforceable agreement between Plaintiff and Support Pets.

Among the terms to which Plaintiff agreed was a mandatory arbitration provision. The language of the arbitration agreement is broad and comprehensive, unequivocally encompassing the claims Plaintiff has asserted against Support Pets. To be sure, whereas the Complaint alleges that Support Pets engaged in conduct which allegedly violated New York General Business Law § 349 and § 350, or otherwise constitute fraud and/or unjust enrichment, the arbitration agreement to which Plaintiff agreed provides, in relevant part, that: "This Provision provides that all disputes between You and Us shall be resolved by binding arbitration because acceptance of these Terms constitutes a waiver of Your right to litigation claims and all opportunity to be heard by a judge or jury . . . Everyone agrees that, except as provided below, any and all disputes, as defined above, whether presently in existence or based on acts or omissions in the past or in the future, will be resolved exclusively and finally by binding arbitration rather than in court in

1

accordance with this provision."

Plaintiff agreed to arbitrate her claims with Support Pets on at least two separate occasions. Consistent with her agreement, Plaintiff must be compelled to arbitrate the claims asserted in the Complaint that she has improperly brought in the incorrect forum.

## RELEVANT BACKGROUND

Plaintiff's claims are premised on the notion that what she purchased from Support Pets through the Support Pets Website failed to meet the expectations for the purchase(s) based upon the promotional representations made regarding the product or service. Implicit in this conceit is the admission that Plaintiff navigated through the Website in a manner which culminated in the purchase.

In order to consummate that purchase, Plaintiff engaged in a process on Support Pets' Website that is standard to all of its customers: after proceeding through a series of survey questions designed to gauge the types of offerings that are most suitable for its prospective customers (*see id.* ¶ 35), the Website visitors are asked to submit their e-mail address. *See* Hedmark Decl. ¶ 6. An accurate recreation of this webpage is shown below.

2



On April 13, 2026, Plaintiff entered an email address to the foregoing webpage while being presented with the disclosure that by submitting she was agreeing to the Terms proximately located relative to the button to submit the email address. *Id.* at ¶ 7.

Because Plaintiff visited the Website on several occasions, Support Pets' records demonstrate that the foregoing is not the only area of the Website on which Plaintiff was presented with notice to the Website Terms, and on which she manifested her assent to those Terms. Specifically, Plaintiff came back to the Website approximately 30 minutes after submitting an email address as previously described and during this Website interaction she completed a purchase, during which she again submitted personally identifying information to the Website.

Plaintiff returned to the Website again the following day, on April 14, 2026 by clicking on a hyperlink contained in an email that was sent to the email address she submitted to the Website. During this April 14, 2026 Website interaction, she submitted an email address while

3

being presented with a disclosure that she was agreeing to the Terms, as represented by the following image:



and submitted a telephone number while being presented with a disclosure that she was agreeing to the Terms, as represented by the following image:



*Hedmark Decl.* ¶ 8.

Thereon, Plaintiff submitted her telephone number pursuant to the conspicuous disclosure directly above the only button on the page which contained explicit "I agree" language indicating that the Terms were attendant to agreement to submit the phone number to receive contact regarding order or evaluation updates, or related marketing messages. Access to the Terms was provided through a conspicuously underlined hyperlink.

The Website Terms include the following language:

> Note: these terms contain a dispute resolution and arbitration provision, including class action waiver that affects your rights under these terms and with respect to disputes you may have with the company. you may opt out of the binding individual arbitration and class action waiver as provided below.

5

*Id.,* Ex. A.

Consistent with that disclosure, the dispute resolution provision of the Terms provides as follows:

**Dispute Resolution and Arbitration; Class Action Waiver**

Please Read This Provision Carefully.   It Affects Your Legal Rights.

This Provision allows us to promptly and efficiently resolve any dispute (e.g., claim or controversy, whether based in contract, statute, regulation, ordinance, tort – including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence – or any other legal or equitable theory, and includes the validity, enforceability, or scope of this Provision (with the exception of the enforceability of the Class Action Waiver clause below) that may arise between You and Us.   Effectively, then, "dispute" is given the broadest meaning enforceable by law and includes any claims against other parties relating to services or products provided or billed to You (such as Our licensors, suppliers, dealers or third-party vendors) whenever You assert claims against Us in the same proceeding.

This Provision provides that all disputes between You and Us shall be resolved by binding arbitration because acceptance of these Terms constitutes a waiver of Your right to litigation claims and all opportunity to be heard by a judge or jury.   We prefer this because We believe arbitration is less drama-filled than litigation.   To be clear, there is no judge or jury in arbitration, and court review of an arbitration award is limited.   The arbitrator must follow this agreement and can award the same damages and relief as a court (including attorney's fees).   You may, however, opt-out of this Provision which means You would have a right or opportunity to bring claims in a court, before a judge or jury, and/or to participate in or be represented in a case filed in court by others (including, but not limited to, class actions).   Everyone agrees that, except as provided below, any and all disputes, as defined above, whether presently in existence or based on acts or omissions in the past or in the future, will be resolved exclusively and finally by binding arbitration rather than in court in accordance with this provision.

*Id.*

6

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed with arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Thus, a court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists and if it does; (2) whether the agreement encompasses the dispute at issue. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (1999). If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *See* 9 U.S.C. §§ 3, 4; *see also Kiefer* at 909. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "Any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." (internal citations omitted)). On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the

parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and draws "all reasonable inferences in favor of the non-moving party." *Segui v. Solar Mosaic, LLC*, 2026 U.S. Dist. LEXIS 132586, at *9-10 (S.D.N.Y. Jun. 15, 2026) (quoting *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)) (internal quotation marks and citations omitted).

When deciding a motion to compel arbitration, courts typically "must decide two questions: [w]hether the parties agreed to arbitrate, and whether the claims fall within the scope of the arbitration agreement." *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018) (citing *David L. Threlkeld & Co Inc. v. Metallgesellschaft Ltd.* (London), 923 F.2d 245, 249 (2d Cir. 1991)). The party seeking to compel arbitration bears the burden of demonstrating that an agreement to arbitrate was made. *Zachman v. Hudson Valley Federal Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022).

Because Plaintiff unambiguously assented to the Terms and its corresponding arbitration provision which requires Plaintiff to resolve all of her claims in arbitration, the Court must grant Support Pets' Motion to Compel arbitration.

## **ARGUMENT**

**I.    PLAINITFF'S CLAIMS MUST BE SUBMITTED TO BINDING ARBITRATION**

The Court should compel arbitration of this dispute for at least two independent reasons: (1) the arbitrator, not the Court, should determine arbitrability; and (2) even if the Court reaches the question of arbitrability, it must still compel arbitration.

**A.  The Arbitrator, Not the Court, Should Determine Arbitrability**

The arbitrator, not the Court, should decide whether the parties entered into a valid arbitration agreement and the scope of that agreement. Federal law permits parties to arbitrate the two threshold questions of arbitrability, namely whether the arbitration agreement is valid and whether its scope covers the claims at issue. *Rent-A-Center, W., Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010). "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. To do so, the parties must "clearly and unmistakably" express an intent to arbitrate gateway questions of arbitrability in their agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).

Here, the language of the arbitration agreement is "clear and unmistakable" evidence of the parties' intent to arbitrate threshold questions of arbitrability through two mechanisms. First, the arbitration agreement provides that "All issues shall be for the arbitrator to decide, including the scope of this Provision." Second, the parties incorporated American Arbitration Association's ("AAA") rules of arbitration into the arbitration agreement. Courts routinely hold that by explicitly incorporating the rules of AAA into an arbitration agreement, the parties clearly and unmistakably agree to submit the threshold questions of arbitrability to arbitration. *See, e.g., Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP,* 2023 U.S. Dist. LEXIS 28569, at *19 (S.D.N.Y. Feb. 21,

2023) ("[A] broad arbitration agreement that incorporates the AAA rules, which explicitly empower an arbitrator to decide arbitrability, can be clear and unmistakable evidence of the parties' intent to arbitrate arbitrability.") (citing *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4h 308, 318-19 (2d Cir. 2021). As such, the issue of whether a valid arbitration agreement exists is expressly left for the arbitrator to resolve. Support Pets' Motion must be granted accordingly.

**B. Even if the Court Reaches Questions of Arbitrability, It Must Compel Arbitration**

A reasoned analysis of the subject arbitration agreement indicates a "clear and unmistakable" intent of the parties to arbitrate threshold questions of arbitrability. However, should the Court reach the issue of the validity of the arbitration agreement, it should still grant Support Pets' Motion.

Because the FAA mandates that "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]" the FAA limits courts' involvement to determining "(1) whether the parties agreed to arbitrate, [and] (2) the scope of that agreement." *Daly v. Citigroup, Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (internal citations omitted). When these conditions are satisfied, the Court must enforce the agreement to arbitrate. 9 U.S.C. §§ 3, 4. As demonstrated herein, these conditions are satisfied because the arbitration agreement falls within the FAA, is valid and enforceable, and encompasses the entire dispute.

*1. The FAA Applies*

The FAA applies to the subject arbitration agreement because it is a written provision in a contract involving commerce within the meaning of Section 2 thereof. A "written provision . . . in a contract" includes an electronic contract such as these Terms. *See* 15 U.S.C. § 7001(a)(1) ("a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form.") Moreover, the Supreme Court

has interpreted the phrase "involving commerce" very broadly, holding that it extends beyond persons and activities within the flow of interstate commerce to include anything that affects commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). Here, it is plain that the Terms affect commerce, as they governed communications between Support Pets and Plaintiff in connection with Support Pets' provision of services to Plaintiff, as well as the purchase by Plaintiff of those services.

### 2. Plaintiff Agreed to Arbitrate Claims Against Support Pets

"To determine whether to compel arbitration, courts perform a two-step inquiry that looks at contract principles 'governed by state rather than federal law.'" *Ross v. Finzer & Atallah*, 2025 U.S. Dist. LEXIS 200325, at *2-3 (S.D.N.Y. Oct. 8, 2025) (quoting *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam). Consistent with the Terms' governing law provision, which provides that "[t]he law of the state of Florida shall govern all questions concerning the construction, validity, interpretation and enforceability of any disputes brought against us, without giving effect to any choice of law or conflict of law rules or provisions (whether of the state of Florida or any other jurisdiction) that would cause the application of the laws of any other jurisdiction other than the state of Florida," it is Florida's law which governs the analysis.

Florida recognizes two categories of internet agreements: clickwrap agreements and browsewrap agreements. *Tejon v. Zeus Networks, LLC,* 174 F.4th 1322, 1330 (11th Cir. 2026) (citing *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)); *see also Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017) (same). A clickwrap agreement requires a user to check a box or click a button to acknowledge acceptance of the agreement's terms and conditions. *Id.* Alternatively, a browsewrap agreement provides users with

11

access to hyperlinked terms, and the user's consent is ordinarily implied by continued use of the website. *See id.* Florida courts will enforce browsewrap agreements where the "purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *MetroPCS Commc'ns Inc.*, 273 So. 3d at 1028 (quoting *Vitacost.com*, 210 So. 3d at 762).

Oftentimes agreements will not fall neatly into one category or the other, occupying a space somewhere in between the two, a category typically referred to as hybridwrap.  These types of agreements may not require that a user check a box to manifest their assent like a clickwrap agreement, but they will more prominently notify users of the presence of the site terms in ways that differentiate them from pure browsewrap agreements in which access to the terms are typically buried at the bottom of the webpage.  *See, e.g, Nicosia v. Amazon.com,* 384 F.Supp.3d 254, 266 (E.D.N.Y. 2019), *aff'd* 815 F.App'x 612 (2d Cir. 2020), and *Domer v. Menard, Inc.*, 116 F.4th 686, 694-95 (7th Cir. 2024). It is this hybridwrap category space that Support Pets' agreement occupies. Hybridwrap agreements are enforced where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his assent to those terms." *Martin v. Lens.com, Inc.*, 2024 U.S. Dist. LEXIS 209632, at *9-10 (S.D. Fla. Nov. 18, 2024) (citing *Domer*, 116 F.4th at 695).

As demonstrated below, Support Pets' website and its terms satisfy the requirements for establishing the existence of an online contract consistent with either Florida law, as provided by the Terms' governing law provision, or New York should the Court apply this forum's substantive law.

12

### a.       *A Valid and Enforceable Agreement Exists.*

"The threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate." *Diaz v. Wanrong Trading Corp.*, 810 F. Supp. 3d 379, 390 (E.D.N.Y. 2025) (quoting *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (internal quotations and alterations omitted). For an enforceable contract to exist under Florida law, "there must be agreement as to all material terms . . . and an intention of the parties to be bound." *Giovo v. McDonald*, 791 So. 2d 38 (Fla. 2d DCA 2001) (noting that "what is an 'essential term' of a contract differs according to circumstances," but in general, "an acceptance must contain an assent to the same matters contained in the offer"). The formation of a contract requires "mutual assent," often referred to as a "meeting of the minds." *Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441 (Fla. 3d DCA 2019).  Mutual assent exists where the parties to a contract "objectively manifested their intent to be bound contractually." *Vision Palm Springs*, 272 So. 3d at 447 (recognizing that mutual assent is determined by an "objective test," looking to both sides' actions and words rather than their subjective mental states).[1]

In Florida, absent actual knowledge, a "reasonably prudent internet user" must be put on "inquiry notice" before an internet agreement will be enforced.  *Fridman v. 1-800 Contacts, Inc.*, 554 F.Supp.3d 1252, 1260 (S.D. Fla. 2021).[2]  As set forth in the accompanying declaration of

---

[1] While the Terms unambiguously provide for Florida law to govern the construction, enforceability, and interpretation of the agreement, New York's law is substantially similar in its requirement of mutual assent.  *See, e.g., Compass Productions Int'l LLC v. Charter Commc'ns, Inc.*, 2023 U.S. App. LEXIS 5264, at *2 (2d Cir. Mar. 6, 2023) (Under New York law, the party seeking to compel arbitration must establish there was a meeting of the minds on all essential terms of the contract, demonstrating the parties' mutual assent and mutual intent to be bound.") (citing *Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571, 576 (2d Cir. 1983)).

[2] New York law, again, is the same on this principle.  *See, e.g., Berkson v. GOGO LLC*, 97 F.Supp.3d 359, 401 (E.D.N.Y. 2015) (A website must be designed such that a "reasonably prudent user" will be placed on "inquiry notice" of the terms of using the website).

Nicole Hedmark, and as detailed further *supra*, Plaintiff was provided with at least constructive, if not actual, notice of the applicability of the Website Terms to her visit and her agreement to same on multiple occasions. During several visits to the Website, Plaintiff voluntarily submitted a variety of personally identifiable information across multiple discrete areas of the Website, including her email address, telephone number, and payment information.  On each such area of the Website, Plaintiff was presented with disclosures notifying her that by taking particular actions, such as submitting her e-mail address or agreeing to be contacted on her telephone number, she would be manifesting her assent to the Terms.  The design and content of each page on which such disclosure was presented encouraged Plaintiff to examine the Terms by clearly presenting them through hyperlinkage, by presenting the hyperlink directly in the disclosure rather than submerged at the bottom of the webpage or otherwise scrolling off the screen to locate the hyperlink, by using dark font color which strongly contrasts against the light background, and by proximately locating the disclosure and hyperlink to the only call to action button on the webpage so that it cannot be missed or overlooked by a user.  Consequently, by taking these distinct actions - clicking the button to either submit her email address, or provide her telephone number to be contacted at same, or to complete her purchase on the Website - Plaintiff manifested her assent to the Terms, consistent with the expectations of all reasonable users of the Internet who are presented with such disclosures at the time that they submit personal information to a Website.

Those Terms contain an explicit disclosure at paragraph two as to the existence of an arbitration agreement, which states as follows:

> Note: these terms contain a dispute resolution and arbitration provision, including class action waiver that affects your rights under these terms and with respect to disputes you may have with

the company. you may opt out of the binding individual arbitration and class action waiver as provided below.

The Terms' arbitration agreement itself provides as follows:

This Provision provides that all disputes between You and Us shall be resolved by binding arbitration because acceptance of these Terms constitutes a waiver of Your right to litigation claims and all opportunity to be heard by a judge or jury. We prefer this because We believe arbitration is less drama-filled than litigation. To be clear, there is no judge or jury in arbitration, and court review of an arbitration award is limited. The arbitrator must follow this agreement and can award the same damages and relief as a court (including attorney's fees). You may, however, opt-out of this Provision which means You would have a right or opportunity to bring claims in a court, before a judge or jury, and/or to participate in or be represented in a case filed in court by others (including, but not limited to, class actions). Everyone agrees that, except as provided below, any and all disputes, as defined above, whether presently in existence or based on acts or omissions in the past or in the future, will be resolved exclusively and finally by binding arbitration rather than in court in accordance with this provision.

*See* Hedmark Decl. ¶, Ex. A

By virtue of the foregoing, a valid and enforceable agreement to arbitrate exists. The Court must compel arbitration of Plaintiff's claims accordingly.

### b.    *Plaintiff's Claims Are Within the Scope of the Arbitration Agreement*

Where an arbitration clause is broad, "there arises a presumption of arbitrability, and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Barrios-Contreras v. Big Fish Ent. LLC*, 2026 U.S. Dist. LEXIS 45995, at *10 (S.D.N.Y. Mar. 6, 2026) (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). Arbitration provisions employing language such as "all claims" are broad and arbitration must be compelled. *See Barrios-Contreras*, 2026 U.S. Dist. LEXIS 45995, at *10 (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225-27 (2d Cir. 2001)) (finding arbitration

15

provision applying to "any dispute from" agreement to be broad).

Here, the arbitration agreement in the Terms and Conditions clearly indicates an intent by the parties for its scope to apply to Plaintiff's claims. Initially, preceding the arbitration agreement itself, the Terms contain the following all capitalized clause in bold lettering:

> THE AGREEMENT CONTAINS DISCLAIMERS OF WARRANTIES, LIMITATIONS OF LIABILITY, RELEASES, A CLASS-ACTION WAIVER, ***AND THE REQUIREMENT TO ARBITRATE ANY AND ALL CLAIMS*** THAT MAY ARISE HEREUNDER AGAINST SUPPORT PETS®, AS WELL AS ITS PARENT, SUBSIDIARIES, RELATED PARTIES, THIRD-PARTY MERCHANDISE PROVIDERS AND MARKETING PARTNERS (COLLECTIVELY, "COVERED PARTIES"), WHO ARE EXPRESS THIRD-PARTY BENEFICIARIES OF THE MANDATORY ARBITRATION PROVISION. THE AFOREMENTIONED PROVISIONS ARE AN ESSENTIAL BASIS OF THE AGREEMENT.

(emphasis added).

Later in the Terms is the paragraph titled "DISPUTE RESOLUTION PROVISION," which states in bold letters the following:

> The parties (and Covered Parties) hereby agree to arbitrate ***all claims*** that may arise under the Agreement. Without limiting the foregoing, should a dispute arise between you and either Support Pets® or any Covered Party concerning the Site Offerings, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) each party agrees to submit their dispute for resolution by arbitration the American Arbitration Association ("AAA") in New York, NY, in accordance with the then current Commercial Arbitration rules of the AAA;

(emphasis added).

The language of the arbitration agreement is broad, comprehensive, and clearly indicates the intent of the parties to encompass all claims against Support Pets, including those Plaintiff asserts in the Complaint. Accordingly, Support Pets' Motion to Compel Arbitration must be

granted.

### c.       *The Arbitration Agreement is Presumed Valid and Enforceable*

Arbitration agreements, such as the one at issue here, are "presumed to be valid and enforceable" by the FAA. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). Though the FAA applies, the statute is construed to permit the application of state law to invalidate arbitration agreements under certain limited circumstances, such as fraud, duress, or unconscionability. *Torres v. United Healthcare Servs.*, 920 F.Supp.2d 368, 373 (E.D.N.Y. 2013). Because the Complaint admits, however, that Plaintiff voluntarily visited the Website and provided information in connection with completing a purchase thereof, there is no plausible argument that her agreement to the Terms was a result of either duress or fraud, leaving only unconscionability.

As stated, *supra*, the Terms mandate that Florida law govern the construction, enforcement, and interpretation of the Terms.  Florida law provides that "[t]o succeed on an unconscionability claim, there must be a showing of both procedural and substantive unconscionability." *Addit, LLC v. Hengesbach*, 341 So.3d 362, 366 (Fla. 2d DCA 2022).  This is the same standard applied by New York law, pursuant to which "[a] determination of unconscionability [similarly] requires a showing that [a] contract was both procedurally and substantively unconscionable when made."  *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988).  That is, there must be some showing of "an absence of meaningful choice on the part of one . . . part[y] together with contract terms which are unreasonably favorable to the other." *King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006).  Here, any argument concerning unconscionability lacks merit.

Courts applying either Florida or New York law have consistently rejected procedural

17

unconscionability challenges to arbitration agreements where the agreement contains an opt-out provision. *See, e.g., Brea Sarasota, LLC v. Bickel,* 95 So.3d 1015, 1017 (Fla. 4th DCA 2012) ("Because the agreement notified Ms. Wasdin that she could avoid arbitration and still take advantage of the facility's services, the agreement was not procedurally unconscionable."); *see also Kai Peng v. Uber Techs*., 237 F.Supp.3d 36, 55 (E.D.N.Y. 2017) ("Courts applying New York law have considered an opt-out provision as an *important, if not dispositive*, factor in rejecting challenges of procedural unconscionability.") (emphasis added).

Here, the arbitration agreement specifically provided Plaintiff with such an opt-out option, providing, *inter alia*, as follows:

> **Exclusions from Arbitration/Right to Opt Out**
>
> Notwithstanding the above, You or We may choose to pursue a Dispute in court and not by arbitration if . . . (b) YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE THAT YOU FIRST CONSENT TO THIS AGREEMENT (the "Opt-Out Deadline"). You may opt-out of this Provision by emailing Us at info@supportpets.com the following information: (1) Your name; (2) Your address; (3) A clear statement that You do not wish to resolve disputes with us through arbitration. . . But, We do have to enforce the Opt-Out Deadline, so keep in mind that any opt-out request received after the Opt-Out deadline will not be valid and You must pursue Your dispute in arbitration or small claims court.

*See* Hedmark Decl., Ex. A.

This option provided Plaintiff with the unconditional right to opt-out of the dispute resolution provisions of the Terms, inclusive of the Arbitration agreement. The notice of the 30-day right of opt-out is expressly provided to users and is a material term of the agreement. Any argument that the contract is procedurally unconscionable is ultimately undermined by the Terms allowing Plaintiff the right to opt-out of the agreed-upon dispute resolution provision.

18

Moreover, the procedural element of unconscionability focuses chiefly on the contract formation process and the alleged lack of meaningful choice. "[T]ake it or leave it" arbitration provisions are not procedurally unconscionable, irrespective of inequality of bargaining power. *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So.2d 34, 40 (Fla. 4th DCA 2005) (stating that "the presence of an adhesion contract alone does not require a finding of procedural unconscionability."); and *Beattie v. Credit One* Bank, 2016 U.S. Dist. LEXIS 104456, at *9 (N.D.N.Y. Aug. 6, 2019) (same). Here, oppression is plainly not present, as Plaintiff was under no duress to accept the Terms, or its arbitration agreement, nor was she induced into doing so. Any purported failure by her to read the Terms and/or the arbitration agreement does not invalidate the contract. *See Winter v. Union Air Transp. GMBH*, 650 So.2d 45, 46 (Fla. 3d DCA 1994) ("[F]ailure to read the [contract] . . . prior to signing it is not a defense against its application.") *see also Velez v. Credit One Bank*, 2016 U.S. Dist. LEXIS 8782, at *11 (E.D.N.Y. Jan. 25, 2016).

Because the arbitration provision is not procedurally unconscionable, the Court need not address whether it is substantively unconscionable, as a finding of unconscionability requires a showing of both procedural and substantive unconscionability. *See Addit, LLC,* 341 So.3d at 366; and *Gillman*, 534 N.E.2d at 828. Because the arbitration agreement is not unconscionable, it is valid and enforceable and mandates arbitration of Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Support Pets respectfully requests that the Court issue an order granting the Motion to Compel Arbitration, and compelling arbitration of and dismissing without prejudice Plaintiff's Class Action Complaint and the claims asserted against Defendant therein or, in the alternative, staying those claims pending completion of arbitration.

Dated: July 10, 2026                                         Respectfully submitted,

**KLEIN MOYNIHAN TURCO LLP**

By: */s/ Neil E. Asnen*
Neil E. Asnen
450 7th Avenue – 40th Floor
New York, NY 10123
(212) 246-0900
nasnen@kleinmoynihan.com

*Attorneys for Support Pets, LLC*

## CERTIFICATE OF COMPLIANCE

I certify that Defendant's Memorandum of Law in Support of Its Motion to Compel Arbitration complies with LR 7.1(c) and contains 5,375 words, inclusive of all text, the caption, headings, footnotes, and quotations. In making the within certification, I used the Microsoft Word software, version 2604.

/s/ *Neil E. Asnen*
Neil E. Asnen

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.


/s/ *Neil E. Asnen*
Neil E. Asnen

21