**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMELIA GOVEN, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  vs.<br><br>SUPPORT PETS LLC, a Florida Company,<br><br>   Defendant. | Case No. 1:26-cv-04226-AT<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**STATEMENT OF FACTS** ..................................................................................................... 3

    A. Plaintiff's Claims Arise From Defendant's Online Marketing and Sale of Emotional Support Animal Products and Services.................................................................................................. 3

    B. Defendant Relies on Multiple Alleged Interactions With Its Website to Establish Assent........................ 4

    C. Defendant's Motion Relies Upon Recreated Website Screens Rather Than Contemporaneous Evidence  4

    D. Defendant Seeks to Enforce The Version of Terms Beneficial To It.......................................... 5

    E. Defendant Does Not Identify Which Agreement Plaintiff Allegedly Accepted........................................ 6

    F. Defendant Moves to Compel Arbitration........................................................................... 7

**LEGAL STANDARD** ......................................................................................................... 12

**ARGUMENT** ................................................................................................................... 12

    I. Defendant Has Failed to Carry Its Burden of Establishing That An Arbitration Agreement Exists Between The Parties .......................................................................................................... 12

        A. Defendant Has Failed to Establish Mutual Assent............................................................... 12

        B. Defendant Has Not Demonstrated That Plaintiff Was on Notice of the Arbitration Agreement...... 15

    II. The Court, Not An Arbitrator, Must Decide This Motion........................................................ 18

    III. At a Minimum, Genuine Issues of Material Fact Require Discovery And An Evidentiary Hearing...... 20

        A. Numerous Issues Prevent Enforceability of the Arbitration Clause At Issue ................................... 20

        B. Defendant's Brief Quotes Language That Does Not Appear in the Exhibit It Cites ......................... 22

        C. The Hedmark Declaration Cannot Carry Defendant's Burden ......................................................... 22

        D. The Appropriate Remedy Is Discovery, Followed by an Evidentiary Hearing if Disputes Remain  23

**CONCLUSION** ................................................................................................................... 23

**TABLE OF AUTHORITIES**

**CASES**

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121 (2d Cir. 2006)* .......................... 7

*Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2003)* ..................................................................................... 9

*Berkson v. Gogo LLC, 97 F. Supp. 3d 359 (E.D.N.Y. 2015)* ......................................................................... 16

*DDK Hotels, LLC v. Williams-Sonoma, Inc., 6 F.4th 308 (2d Cir. 2021)* ..................................................... 19

*Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245 (2d Cir. 2019)* .........................................................8-18

*First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)* .............................................................8-9, 18

*Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP, 2023 U.S. Dist. LEXIS 28569 (S.D.N.Y. Feb. 21, 2023)* ................................................................................................................................................................. 20

*Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010)* ................................................................ 8,9

*Guidotti v. Legal Helpers Debt Resolution, LLC, 639 F. App'x 824 (3d Cir. 2013)* ...................................... 23

*Martin v. Lens.com, Inc., 2024 WL 4826048 (S.D. Fla. Nov. 19, 2024)* ........................................................ 15

*MetroPCS Commc'ns, Inc. v. Porter, 273 So. 3d 1025 (Fla. 3d DCA 2018)* ........................................... 11, 16

*Meyer v. Uber Techs., Inc., 868 F.3d 66 (2d Cir. 2017)* ..........................................................9-11, 13, 15-16

*Nicosia v. Amazon.com, Inc., 834 F.3d 220 (2d Cir. 2016)* ......................................................................10-11

*Republic of Ecuador v. Chevron Corp., 638 F.3d 384 (2d Cir. 2011)* ............................................................. 8

*Starke v. SquareTrade, Inc., 913 F.3d 279 (2d Cir. 2019)* .......................................................................10-11

*Stonehill Capital Mgmt. LLC v. Bank of the West, 28 N.Y.3d 439 (2016)* .................................................... 13

*Vision Palm Springs, LLLP v. Michael Anthony Co., 272 So. 3d 441 (Fla. 3d DCA 2019)* .......................... 13

*Vitacost.com, Inc. v. McCants, 210 So. 3d 761 (Fla. 4th DCA 2017)* ...........................................11-12, 16-17

*VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P., 717 F.3d 322 (2d Cir. 2013)* ................................................................................................................................................................... 8

*WTA Tour, Inc. v. Super Slam Ltd., 339 F. Supp. 3d 390 (S.D.N.Y. 2018)* ..................................................... 7

*Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95 (2d Cir. 2022)* ..................................8-11, 13, 18

**STATUTES**

9 U.S.C. § 4 ................................................................................................................................................. 20, 23

## PRELIMINARY STATEMENT

Defendant asks this Court to compel Plaintiff to arbitrate based on the assertion that Plaintiff agreed to an online arbitration provision while interacting with Defendant's website. The motion, however, rests on assumptions—not evidence. The Federal Arbitration Act requires the party seeking to compel arbitration to establish the existence of a valid agreement to arbitrate. Defendant has failed to satisfy that threshold burden.

Rather than presenting competent evidence demonstrating that Plaintiff knowingly assented to a particular arbitration agreement, Defendant relies on recreated screenshots, generalized descriptions of its website and a declaration that fails to establish what Plaintiff actually saw during the relevant time period. The evidentiary record leaves unanswered numerous questions concerning the presentation of the alleged agreement, and the functionality and content of any purported hyperlink linking consumers to website's terms and conditions, as well as whether a hyperlink was presented to the consumer at all.

The deficiencies relating to Defendant's evidentiary record are compounded by the fact that Defendant maintained two materially different versions of its Website's terms, each of which is governed by different State laws. Specifically, the version relied upon by Defendant in connection with this Motion contains an arbitration provision, a Florida governing law clause, a venue provision and a dispute-resolution procedure (the "Exhibit A Terms"). Incredibly, Defendant has a second and wholly-separate version of terms that it makes publicly available on its website containing materially different provisions governing those same subjects and a New York governing law clause (the "Published Terms"). As shown below, Defendant did not introduce into the record the Published Terms but, nevertheless, sought to rely upon them when it found it suitable.  More importantly for purposes of its Motion, Defendant never identifies which version Plaintiff allegedly accepted: the Exhibit A Terms it attached to its papers or the Published Terms

1

it chose to hide from the Court. Defendant also failed to inform the Court when the Exhibit A Terms became operative, whether different webpages linked to the Exhibit A Terms versus the Published Terms or why materially different website terms simultaneously existed. Without establishing which agreement allegedly governed Plaintiff's transaction, Defendant cannot establish that Plaintiff agreed to arbitrate under the particular provisions it now seeks to enforce.

Defendant likewise attempts to bypass the Court's threshold responsibility by arguing that questions of arbitrability must be decided by the arbitrator because the alleged agreement incorporates the American Arbitration Association's rules. That argument improperly assumes the existence of the very contract Defendant must first prove exists. Indeed, before any delegation provision can be enforced, the Court must determine whether the parties formed an agreement to arbitrate in the first instance. Where, as here, contract formation itself is disputed, those issues remain for judicial determination.

Putting aside the fact that it is impossible for this Court and for Plaintiff to know what agreement Defendant alleges governs, which altogether seals Defendant's fate on this Motion, even assuming Defendant could establish that Plaintiff was presented with some form of online notice, the record does not establish that such notice was reasonably conspicuous under governing law. Indeed, Defendant's recreated screenshots do not demonstrate the appearance of the webpages as Plaintiff encountered them, including the size, placement, formatting, visibility, or functionality of the alleged hyperlinks, including whether hyperlinks were even presented at all, nor do they establish the layout presented to Plaintiff's device or browser. Instead, Defendant asks the Court to infer assent from reconstructed webpages Defendant specifically created to support its Motion, rather than contemporaneous evidence reflecting Plaintiff's actual browsing experience.

2

In sum, Defendant bears the burden of proving the existence of a valid arbitration agreement. It cannot satisfy that burden by relying upon conflicting contractual documents, recreated webpages and conclusory assertions by Defendant's employee regarding Plaintiff's assent to arbitrate. At a minimum, the record presents genuine disputes of material fact concerning contract formation, notice and mutual assent that preclude an order compelling arbitration on the present record.

Accordingly, Defendant's Motion to Compel Arbitration should be denied. Alternatively, should the Court conclude that the present record is insufficient to resolve the disputed issues concerning contract formation, Plaintiff respectfully requests discovery relevant to the issues raised by this Motion and an evidentiary hearing limited to those issues before any determination regarding arbitration is made.

## STATEMENT OF FACTS

### A. Plaintiff's Claims Arise From Defendant's Online Marketing and Sale of Emotional Support Animal Products and Services.

Plaintiff commenced this action after purchasing products and services through Defendant Support Pets LLC's website in reliance on Defendant's representations concerning those products and services. Class Action Complaint dated May 20, 2026, ECF 1 ("Comp.").  As alleged in the Complaint, Plaintiff contends that Defendant's representations regarding its products and services were false and misleading and violated New York consumer protection law.  Comp. ¶¶ 60-85.

Defendant does not dispute that Plaintiff visited its website, provided certain information through the website, or ultimately purchased products and services offered by Defendant. Instead, Defendant seeks to avoid judicial resolution of Plaintiff's claims by contending that Plaintiff purportedly agreed to arbitrate any dispute arising from her interactions with Defendant's website.

3

*See* Defendant's Memorandum of Law In Support of its Motion to Compel Arbitration dated July 24, 2026 (ECF 14) ("Br.") 9-19.

Accordingly, Defendant's motion concerns only whether Defendant has carried its burden of establishing the existence of an enforceable agreement requiring arbitration.

**B. Defendant Relies on Multiple Alleged Interactions With Its Website to Establish Assent**

According to Defendant, Plaintiff first visited Defendant's website on April 13, 2026. Declaration of Nicole Hedmark dated July 10, 2026 (ECF 13) ("Hedmark Decl.") ¶ 6. During that visit, Defendant asserts that Plaintiff completed a series of online questions before being prompted to provide an email address. *Id*. Defendant contends that the webpage displayed language advising users that submission of an email address constituted agreement to Defendant's Terms and Conditions. *Id.*

Defendant further contends that Plaintiff returned to the website approximately thirty minutes later and completed a purchase after providing additional personal information. *Id.* at ¶ 7. Defendant also asserts that Plaintiff revisited the website the following day by clicking a hyperlink contained in an email previously sent by Defendant and again entered personal information through Defendant's website. *Id.* at ¶ 8.

Based upon these alleged interactions, Defendant argues that Plaintiff assented to Defendant's website terms on multiple occasions and is therefore bound by an arbitration provision contained within those terms.

**C. Defendant's Motion Relies Upon Recreated Website Screens Rather Than Contemporaneous Evidence**

In support of its Motion, Defendant submitted images purporting to depict webpages that Plaintiff allegedly encountered while using Defendant's website. *Id.* ¶¶ 6, 8.

Notably, Defendant does not rely upon contemporaneous screenshots captured during Plaintiff's visits to the website. Instead, Defendant characterizes the submitted webpages as recreations of the webpages Plaintiff allegedly viewed. *Id*. Defendant also fails to submit the underlying HTML source code, archived webpages, website metadata, version histories or other contemporaneous technical evidence demonstrating precisely what appeared on Plaintiff's screen during the relevant period. Likewise absent from Defendant's evidentiary submission is any evidence identifying the browser, operating system, screen resolution, viewport dimensions, device type or other variables affecting how the webpages were displayed to Plaintiff, including the placement of notices relevant to the website's terms and any purported hyperlink linking consumers to said terms.

**D. Defendant Seeks to Enforce The Version of Terms Beneficial To It**

The arbitration provision Defendant seeks to enforce appears in the Exhibit A Terms, which were attached to the Hedmark Declaration. Hedmark Decl. ¶ 11, Ex. A. That document provides, among other things, that Florida law governs disputes between consumers and Defendant, requires arbitration before the American Arbitration Association, specifies Florida as the location of arbitration initiated by consumers, contains a thirty-day opt-out provision, and includes a delegation provision purporting to assign issues concerning the scope and enforceability of the arbitration provision to the arbitrator. *Id*. Ex. A at § 6. Defendant's motion repeatedly relies upon that document as the operative agreement governing Plaintiff's claims.  Br. 5-6, 13-19.

However, separate and apart from the document attached to Defendant's motion, Defendant maintains on its website the Published Terms, which differ materially from the version submitted with the Hedmark Declaration.  Declaration of Carlos F. Ramirez dated July 24, 2026 ("Ramirez Decl."), Exhibit A.  The Published Terms can be accessed by clicking on a hyperlink

5

that appears at the bottom of Defendant's website's home page labeled "Terms of Service."  *Id* at ¶ 3.

Among other differences, the Published Terms contain a different governing law provision, selecting New York law rather than Florida law, require arbitration in New York rather than Florida, establish materially different pre-arbitration procedures, include an Initial Dispute Notice process, reference the American Arbitration Association's Mass Arbitration Rules, provide different fee-shifting provisions and otherwise prescribe materially different procedures governing dispute resolution.  *See* Ramirez Decl. ¶ 3.

The two versions therefore contain materially different contractual provisions concerning the arbitration clause Defendant asks this Court to enforce.

**E. Defendant Does Not Identify Which Agreement Plaintiff Allegedly Accepted.**

Although Defendant's motion assumes that Plaintiff agreed to the arbitration provision contained in the Exhibit A Terms, its Motion papers nor the Hedmark Declaration identify which version of Defendant's terms was allegedly presented to Plaintiff during her interactions with Defendant's website.

The record likewise does not identify:

- when either version of the Terms became effective;

- whether different webpages linked to different Terms;

- whether multiple versions were simultaneously available;

- whether hyperlinks appearing on the various webpages directed users to identical contractual language or

- whether the webpages allegedly viewed by Plaintiff linked to the specific version attached to Defendant's motion.

6

The fact that Defendant presents its customers with two materially different sets of website terms renders it almost impossible that Defendant and Plaintiff agreed to a specific set of terms and conditions with respect to arbitrating any issues relating to their transaction.

## F. Defendant Moves to Compel Arbitration

Relying upon the foregoing factual record created by Defendant in support of its Motion, it now asks this Court to compel Plaintiff to arbitrate all claims asserted in the Complaint. Defendant argues that Plaintiff assented to the Exhibit A Terms through her interactions with Defendant's website, that the arbitration provision broadly encompasses Plaintiff's claims, and that questions concerning arbitrability must themselves be decided by an arbitrator pursuant to the delegation provision and the incorporation of the American Arbitration Association's rules.  Br. 9-19.

Plaintiff disputes those contentions. In fact, based on the highly suspect factual record put forth here, Defendant has not come anywhere close to carrying its burden of establishing the existence of an enforceable arbitration agreement, and the present record contains substantial factual disputes concerning contract formation, inquiry notice and mutual assent that preclude the extraordinary relief Defendant seeks.

## LEGAL STANDARD

A court faced with a petition to compel arbitration must decide two questions: Whether the parties agreed to arbitrate, and whether the claims fall within the scope of the arbitration agreement. *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018). In fact, "under the Federal Arbitration Act, as interpreted by the Supreme Court, the general presumption is that the issue of arbitrability should be resolved by the courts." *Alliance Bernstein Inv. Research and Management, Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006). This presumption may be

overcome by clear and unmistakable evidence that the parties intended to arbitrate issues of arbitrability. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011). However, "[t]he more basic issue ... of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, 'questions of arbitrability' could hardly have been clearly and unmistakably given over to an arbitrator." *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013). Thus, "a court must begin by deciding whether the parties before it clearly and unmistakably committed to arbitrate questions regarding the scope of their arbitration agreement." *Id.* at 326.

In addition, the party seeking to compel arbitration bears the burden of proving, by a preponderance of the evidence, that a valid agreement to arbitrate entered into online exists, including by providing screenshots of the webpage(s) used to engage with the consumer. *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 104–05 (2d Cir. 2022). That burden includes establishing that the parties mutually assented to the arbitration provision under applicable principles of state contract law. And although the FAA embodies a liberal policy favoring arbitration agreements, an arbitration agreement should only stand if there is "a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute." *Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) (noting that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (holding that "[t]he

8

threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate.") (internal quotation marks omitted). Rather, ordinary state-law principles governing contract formation control whether an agreement was ever formed. *First Options*, 514 U.S. at 944; *Zachman*, 49 F.4th at 101–02.

Because arbitration is contractual in nature, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010). Thus, before any delegation provision or arbitration clause may be enforced, the Court must first determine whether the parties formed a contract containing those provisions.

Where, as here, contract formation is disputed, motions to compel arbitration are evaluated under a standard analogous to summary judgment. *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Thus, a district court must consider all competent evidence submitted by the parties and draw all reasonable inferences in favor of the non-moving party. *Id*. If genuine disputes of material fact exist concerning the making of the arbitration agreement, the Court may not compel arbitration on the papers. *Zachman*, 49 F.4th at 102. Instead, Section 4 of the FAA requires that those factual disputes be resolved through an evidentiary hearing or trial. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)

Because this case concerns an online agreement, the Court must also determine whether Defendant has established mutual assent under the principles governing internet-based contracts. Regardless of whether the agreement is characterized as a clickwrap, browsewrap, sign-in wrap or hybridwrap agreement, the touchstone remains the same: whether the website provided reasonably

conspicuous notice of the contractual terms and whether the user objectively manifested assent to those terms. *See Meyer,* 868 F.3d at 77-80; *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288, 292-95 (2d Cir. 2019).

Whether a reasonably prudent internet user would have been placed on inquiry notice is an objective inquiry that depends upon the totality of the website's design and presentation. *Zachman*, 49 F.4th at 102-04.  Courts consider numerous factors, including the placement of the notice relative to the action button, the size, color, and font of the text, whether the hyperlink was visually distinguishable, whether the webpage required scrolling, whether competing visual elements distracted attention from the notice, whether the user was required to take affirmative action manifesting assent, and the overall clarity of the webpage. *Id*. at 102-05; *see also Meyer*, 868 F.3d at 77-79; *Starke,* 913 F.3d at 289-94.  No single feature is dispositive; rather, the Court must evaluate the webpage as a whole to determine whether it reasonably communicated that the user was entering into a binding contractual relationship.

Importantly, the Second Circuit has repeatedly emphasized that internet users are not deemed to have assented to contractual terms merely because hyperlinks exist somewhere on a webpage. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016)(noting that, "Where the terms are not displayed, but are instead available only by hyperlink, courts have refused to find constructive notice where the layout of the webpage is insufficient to put users on inquiry notice of the terms."); *Starke*, 913 F.3d at 289-90 (holding that, "Simply making terms and conditions available via hyperlink, without more, is insufficient to establish inquiry notice.  [T]he presentation must be clear enough to put a reasonably prudent user on inquiry notice."). Instead, the website must provide reasonably conspicuous notice that the user is agreeing to contractual terms before the user's conduct may be construed as manifesting assent. *Starke*, 913 F.3d at 296-97. Where the

10

presentation of the alleged agreement leaves room for reasonable disagreement regarding notice or assent, where the record does not establish reasonably conspicuous notice and unambiguous assent as a matter of law, courts routinely deny motions to compel arbitration or require further factual development. *Id.*

Applying New York law, which is not materially different from Florida law on this issue, the Second Circuit has analyzed these same considerations in determining whether online interfaces provided reasonably conspicuous notice and objective manifestations of assent, making those decisions persuasive in evaluating materially similar interface-design questions. *See Meyer,* 868 F.3d at 77–79; *Starke*, 913 F.3d at 289–94; *Nicosia,* 834 F.3d at 235–38. Where the evidence leaves room for reasonable disagreement as to whether the interface provided inquiry notice or whether the user's conduct objectively manifested assent, courts decline to enforce the alleged online agreement as a matter of law or conclude that further factual proceedings are required to resolve disputed issues concerning contract formation. *Zachman*, 49 F.4th at 104–05.

The outcome is no different under Florida law, which Defendant argues applies here. Under Florida law, a consumer is not bound by online terms unless the website provides notice sufficiently conspicuous to place a reasonably prudent user on inquiry notice of those terms and the user's conduct objectively manifests assent to them. *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018); *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017). In determining whether that standard has been satisfied, courts examine the totality of the website's design and presentation rather than any single feature in isolation. *Meyer*, 868 F.3rd. at 77-79; *Nicosia*, 834 F.3rd at 236-37. Relevant considerations include the placement of the notice relative to the action button, the size, color, font, and prominence of the notice, whether any hyperlink was visually distinguishable from surrounding text, whether the user was

required to scroll to locate the notice, whether competing visual elements diverted the user's attention, whether the interface clearly communicated that the user's affirmative action constituted acceptance of contractual terms, and the overall clarity and organization of the webpage. *Vitacost.com, Inc.*, 210 So. 3d at 763-66.

Finally, Defendant's contention that questions of arbitrability should be decided by an arbitrator does not alter the Court's threshold responsibility to determine whether an agreement to arbitrate was ever formed. That is, although parties may delegate certain gateway questions to an arbitrator, such delegation provisions become operative only after the Court determines that a valid arbitration agreement exists. Where, as here, Plaintiff disputes the very existence of any agreement to arbitrate, issues of contract formation remain for judicial determination.

Accordingly, before compelling arbitration, this Court must determine whether Defendant has carried its burden of establishing that Plaintiff received reasonably conspicuous notice of the operative terms and conditions, objectively manifested assent to those terms and conditions, and entered into the particular arbitration agreement Defendant seeks to enforce. Because Defendant bears the burden of proof on each of those issues, and because any genuine dispute of material fact must be resolved in Plaintiff's favor at this stage, Defendant's motion must be denied unless the Court concludes that the evidentiary record establishes contract formation as a matter of law.

## ARGUMENT

### I. Defendant Has Failed to Carry Its Burden of Establishing That An Arbitration Agreement Exists Between The Parties

#### A. Defendant Has Failed to Establish Mutual Assent

The threshold issue before the Court is not whether arbitration is favored as a matter of federal policy, but whether Defendant has established that Plaintiff ever agreed to the particular arbitration agreement it seeks to enforce. The law is crystal clear that Defendant bears that burden.

12

*Zachman*, 49 F.4th at 101–02. In deciding whether an arbitration agreement was formed, courts apply a standard analogous to summary judgment, considering the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences against the party seeking to compel arbitration. *Meyer*, 868 F.3d at 74.

Under either Florida or New York law, contract formation requires mutual assent to all material terms. Mutual assent requires an objective "meeting of the minds." *Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 447 (Fla. 3d DCA 2019). New York law imposes materially the same requirement. *Stonehill Capital Mgmt. LLC v. Bank of the West*, 28 N.Y.3d 439, 448 (2016).

Defendant has failed to satisfy that burden because the record does not establish what contractual terms Plaintiff allegedly accepted. Defendant's motion assumes that Plaintiff assented to Exhibit A Terms attached to the Hedmark Declaration. But the record demonstrates that Defendant maintained another materially different set of terms and conditions governing use of the same website, the Published Terms. Ramirez Decl. ¶ 4. Defendant nowhere explains which version was presented to Plaintiff, when each version became operative, whether different webpages linked to different agreements or which agreement is retrieved when a user clicks the referenced hyperlink.

The differences between the two agreements are neither cosmetic nor immaterial. They govern the very issues that determine the parties' respective rights in this litigation. Among other things, the agreements prescribe different governing-law provisions, different arbitral fora, different dispute-resolution procedures, different pre-arbitration requirements, different attorney-fee provisions, different limitations on available remedies and materially different opt-out

13

mechanisms. These are not ancillary contractual provisions; they define the parties' obligations concerning dispute resolution itself.

The discrepancy is perhaps most apparent with respect to the opt-out provision, which Defendant repeatedly relies upon to argue that the arbitration agreement cannot be procedurally unconscionable. Br. 17-18. Under the Exhibit A Terms, a consumer must opt out within thirty days of "the date that you first consent to this Agreement" by emailing Defendant specified information, including the consumer's name, address, and a statement declining arbitration. *Id*. at 18. By contrast, the Published Terms require written notice within thirty days of "the date that you first access the Site" and describe a materially different opt-out procedure. Ramirez Decl. ¶ 23. Thus, even the event that triggers a consumer's opt-out right, and the method by which those rights must be exercised, differs depending upon which agreement governs.

Defendant cannot invoke an opt-out provision as evidence of meaningful choice while simultaneously failing to establish which opt-out provision Plaintiff allegedly received. Nor can Defendant demonstrate that Plaintiff waived contractual rights whose content it has not identified with certainty.

The evidentiary record only underscores this failure of proof. The Hedmark Declaration states that a user clicking the relevant hyperlink "would have retrieved the Terms and Conditions document." Hedmark Decl. ¶ 10. The declaration, however, never identifies the URL associated with the hyperlink, the version of the Terms located at that URL, whether the linked document changed over time, or whether different webpages linked to different contractual documents. Nor does Defendant produce the underlying HTML, source code, website version history, server logs, archived webpages, or any other contemporaneous evidence identifying the content of the hyperlink presented to Plaintiff in April 2026.

14

That omission is significant because Defendant, not Plaintiff, controls the website, the underlying code, the document versions and the records necessary to establish what users actually encountered. Yet Defendant offers none of that evidence. Instead, it asks the Court to infer that the hyperlink necessarily directed Plaintiff to the version of the Terms Defendant now seeks to enforce. On a motion to compel arbitration, however, all reasonable inferences must be drawn in favor of the non-moving party. Drawing those inferences here, the present record does not establish which of Defendant's website's terms was presented to Plaintiff.

Because Defendant has failed to establish the identity of the agreement to which Plaintiff allegedly assented, it necessarily has failed to establish mutual assent to the arbitration provision contained in the Exhibit A Terms. At a minimum, the existence of multiple materially different contractual agreements creates a genuine dispute of material fact concerning contract formation that precludes compelling arbitration on the present record.

**B. Defendant Has Not Demonstrated That Plaintiff Was on Notice of the Arbitration Agreement**

Under both Florida and New York law, an online agreement is enforceable only where the website provides reasonably conspicuous notice of the contractual terms and the user takes an action that objectively and unambiguously manifests assent to those terms. *Martin v. Lens.com, Inc.*, Case No. 24-CV-60489-LEIBOWITZ, 2024 WL 4826048, at *4–7 (S.D. Fla. Nov. 19, 2024); *Meyer,* 868 F.3d at 77-80. Defendant expressly acknowledges that this is the governing standard. Br. 13-14. Yet the evidence Defendant submitted falls well short of establishing either element.

As an initial matter, two of the three webpages on which Defendant relies do not, on their face, display any hyperlink to the purported operative Exhibit A Terms. The April 13 webpage and the April 14 email landing page each state that, by proceeding, the user is "agreeing to the terms of the website," but neither image depicts any means, for example via a hyperlink, by which the

15

user could actually access those terms. Br. 3-4. Defendant's evidence therefore does not establish that a reasonably prudent user was placed on inquiry notice of the agreement Defendant now seeks to enforce. Assuming that Florida law applies, which Plaintiff does not concede is the case because the Published Terms state that New York law applies, Florida courts enforce browsewrap and hybridwrap agreements only where the hyperlink to the governing terms is sufficiently conspicuous to place a reasonably prudent consumer on inquiry notice. *MetroPCS*, 273 So. 3d at 1028-29; *Vitacost.com,* 210 So. 3d at 764. On the present record, Defendant has not demonstrated that such notice existed.

The third interface fares no better. There, the only visible reference to the Terms appears within the smallest block of text on the page, embedded in a paragraph devoted ***almost entirely*** to SMS marketing disclosures, recurring text messages, message frequency, carrier charges and related communications. Br. 5. A reasonable consumer reading that paragraph would likely understand it to concern consent to receive text messages from Defendant over anything else. Nothing in the design or surrounding context alerts the user that the embedded hyperlink purportedly incorporates an expansive arbitration agreement containing, among other things, a jury-trial waiver, class-action waiver, delegation provision, forum-selection clause, attorney-fee limitation, and other significant contractual restrictions. The Second Circuit has instructed that conspicuousness depends upon whether the overall design of the interface directs a user's attention to the contractual terms, not whether a hyperlink can be located through close inspection. *Meyer*, 868 F.3d at 78-79; *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 401–04 (E.D.N.Y. 2015). Here, the interface directs the user's attention elsewhere—to the questionnaire, the highlighted benefits and Defendant's request for the user's telephone number.  Accordingly, the overall design of the interface does not conspicuously direct Plaintiff's (or any user's) attention to the contractual terms.

16

Nor do the buttons themselves objectively communicate contractual assent. The relevant buttons are labeled "Finish & Qualify Now," "Calculate My Results," and "Next." Hedmark Decl. ¶¶ 6, 8. None references acceptance, agreement, consent to contractual terms or similar language. Instead, each conveys only that the user is advancing through Defendant's eligibility questionnaire or application process. Under *Meyer*, the relevant inquiry is whether the user's action would objectively communicate assent to contractual terms. 868 F.3d at 75-76. A button inviting the user to proceed to the next step of an online questionnaire does not, without more, unmistakably communicates agreement to an arbitration clause buried within ancillary text elsewhere on the page.

Defendant's own terms further underscore the uncertainty surrounding assent. The Exhibit A Terms provide that "[b]y accessing this website, we assume you accept these terms and conditions in full." Hedmark Decl. at p. 1. That language reflects the very type of browsewrap agreement that courts have held unenforceable absent actual knowledge or reasonably conspicuous notice. *Vitacost.com*, 210 So. 3d at 762-63. Thus, even Defendant's operative agreement appears to assume assent from website access rather than establishing that assent through a clear manifestation of contractual acceptance.

Finally, Defendant's assertion that Plaintiff separately assented during checkout finds no support in the evidentiary record. Although Defendant's memorandum states that Plaintiff again agreed to the Terms while completing her purchase, the Hedmark Declaration does not identify the checkout interface, describe the relevant disclosure or attach an image of the checkout page demonstrating what Plaintiff allegedly saw. Nor does Defendant submit the source code, webpage archive, or other contemporaneous evidence establishing that any checkout disclosure existed. Counsel's characterization of the checkout process is not evidence, and the Court may consider

17

only competent evidence in determining whether Defendant has carried its burden of proving contract formation.

Viewed collectively, Defendant's evidence does not establish, as a matter of law, that Plaintiff received reasonably conspicuous notice of the arbitration agreement or objectively manifested assent to its terms. At a minimum, the record presents genuine disputes concerning the design of the interfaces, the visibility of the alleged hyperlinks, the context in which they appeared and the manner in which Plaintiff allegedly assented. Those disputes must be resolved against Defendant on this motion and preclude an order compelling arbitration.

## II.  The Court, Not An Arbitrator, Must Decide This Motion

Defendant also argues that this Court must refer to a AAA arbitrator the question, *"whether the parties entered into a valid arbitration agreement."* Def. Br. at 9. However, before a court may enforce a delegation provision contained in an arbitration agreement, it must first determine that the arbitration agreement containing said provision was legally formed.  *See Doctor's Assocs., Inc.,* 934 F.3d at 254; *Zachman*, 49 F.4th at 101-02. In addition, said delegation requires "clear and unmistakable" evidence of intent, a standard the Supreme Court has described as more exacting than ordinary contract interpretation. *First Options,* 514 U.S. at 944-45.  Defendant's Exhibit A Terms requirement that "[a]ll *issues shall be for the arbitrator to decide, including the scope of this Provision,"* cannot satisfy that standard here for three reasons.

First, the delegation provision appears in only one of two conflicting agreements: the Exhibit A Terms.  Hedmark Decl. at p. 5, Dispute Resolutions and Arbitration; Class Action Waiver.  The Published Terms contain no such provisions. Because Plaintiff and the Court do not know which of the Terms she read, if any, there is no clear and unmistakable evidence that she agreed to delegate anything.

18

Second, the delegation provision in the Exhibit A Terms appears in the middle of the "Arbitration Procedures" subsection, roughly two-thirds of the way through a twelve-page single-spaced document, reachable only through a hyperlink embedded in the fourth line of a five-line SMS-marketing consent paragraph. *Id.* Delegation of gateway questions is a significant relinquishment of judicial recourse, and burial of the magnitude seen here is not clear and unmistakable notice to a consumer.

Third, the Exhibit A Terms undercut its own delegation clause. First, the Dispute Resolution and Arbitration; Class Action Waiver section of those Terms reserves to the courts *"the enforceability of the Class Action Waiver clause,"* and its severability provision states that if that clause is unenforceable, *"this entire Provision will be unenforceable and the dispute will be decided by a court."* *Id.* Second, it permits either party to proceed in small-claims court and designates the Miami-Dade courts for non-arbitrable disputes. I at p. 6, General.  An agreement that repeatedly carves out judicial determination does not clearly and unmistakably commit *all* gateway questions to an arbitrator. *See DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318–21 (2d Cir. 2021) (delegation must be assessed against the agreement as a whole; carve-outs may negate otherwise broad language).

Defendant's alternative theory—that incorporating AAA rules delegates arbitrability—fails for the above reasons and also because the case law it relied upon is inapposite. Br. 9. Specifically, one case that Defendant relied upon involved a negotiated joint venture agreement between sophisticated companies (*DDK Hotels*) and the other involved an employment agreement between a lawyer and high-powered law firm (*Gordon v. Wilson Elser Mostowitz Edelman & Dicker LLP,* 2023 U.S. Dist. LEXIS 28569 (S.D.N.Y. Feb. 21, 2023); neither of which involved an adhesion contract between a  commercial entity and a consumer.

19

In sum, Plaintiff does not contend that an arbitrator lacks authority to decide gateway questions under an otherwise valid delegation clause. Plaintiff contends that Defendant has failed to establish that Plaintiff ever entered into any contract with Defendant containing such a clause. For these reasons, the question whether the parties entered into a valid arbitration agreement must be decided by the Court.

### III. At a Minimum, Genuine Issues of Material Fact Require Discovery And An Evidentiary Hearing

Defendant seeks to strip Plaintiff of her chosen forum, her right to a jury and her ability to proceed on behalf of a class, on the purported strength of a five-page declaration from an interested corporate officer, unaccompanied by a single record supporting the actual interactions between Plaintiff and Defendant's website and appending a purported governing contract that differs materially from the document Defendant publishes to the world as its Service Terms. The FAA does not permit that result. Where the making of the arbitration agreement *is* in issue, the statute commands not that the Court compel arbitration, but that it proceed to trial on the formation question. 9 U.S.C. § 4.

### A. Numerous Issues Prevent Enforceability of the Arbitration Clause At Issue

As explained in detail above, the following issues defeat enforceability:

i.      The governing standard on a motion to compel arbitration forecloses summary disposition on the disputed record presented by Defendant;

ii.     The two versions of Defendant's Terms contain materially different arbitration provisions;

iii.    The Hedmark Declaration rests on records it did not produce;

iv.    The disputed facts are material to every issue Defendant raises:

20

a. **Delegation**. Whether arbitrability was "clearly and unmistakably" delegated depends on which Terms govern. The published version contains no delegation clause. A clear-and-unmistakable showing cannot be made from an ambiguous record.

b. **Formation**. Whether Plaintiff received reasonably conspicuous notice depends on what her device displayed, a fact Defendant has not addressed.

c. **Governing law**. Defendant's entire choice-of-law analysis rests entirely on the Exhibit A Terms's Florida governing Law clause. However, the Published Terms select New York as the governing law. The Court cannot determine which body of law governs enforceability without first determining which contract, if either, was formed.

d. **Unconscionability**. Defendant argues the opt-out defeats procedural unconscionability. But the two documents start the opt-out clock at different moments. Under the Published Terms, the thirty-day window may well have expired before Plaintiff ever made a purchase, rendering the "unconditional right to opt-out" Defendant touts (Br. 18) illusory as applied. Whether an opt-out right is meaningful is a fact question that cannot be resolved at this stage.

Thus, a hearing on the above issues would be required before this Court can decide whether Plaintiff's complaint is subject to arbitration.

**B. Defendant's Brief Quotes Language That Does Not Appear in the Exhibit It Cites**

Incredibly, in support of its Motion, Defendant cites from both the Exhibit A Terms that it relies upon, and the Published Terms, which it altogether failed to introduce into the record. For example, from the undisclosed Published Terms, Defendant quotes an all-capitalized block beginning "THE AGREEMENT CONTAINS DISCLAIMERS OF WARRANTIES,

21

LIMITATIONS OF LIABILITY, RELEASES, A CLASS-ACTION WAIVER," and identifying "COVERED PARTIES" as express third-party beneficiaries of the arbitration provision. Br. 16-17; *see also* Ramirez Decl. ¶ Preamble.

Immediately following, Defendant also quotes from the Published Terms a paragraph it describes as "titled 'DISPUTE RESOLUTION PROVISION,'" reciting that the parties "hereby agree to arbitrate all claims that may arise under the Agreement" and directing arbitration "by the American Arbitration Association ('AAA') in New York, NY, in accordance with the then current Commercial Arbitration rules of the AAA." Ramirez Decl. Exhibit A at ¶ 23.

**D.      The Hedmark Declaration Cannot Carry Defendant's Burden**

Even setting aside the two materially different agreements problem aside, the Hedmark Declaration cannot carry Defendant's burden here.  As detailed above, the underlying records purportedly stored in Defendant's database have not been made available; the screenshots are admittedly not what Plaintiff saw; the Declaration does not describe what Plaintiff's device displayed; Defendant's factual assertion of assent**,** "[o]nly by pressing the 'Next' button can Support Pets's database record that a user has checked the unchecked box," Hedmark Decl. ¶ 9, is conclusory; and the hyperlink assertion (or lack thereof) undercuts Defendant's own exhibit. *Id.* ¶¶ 6, 8. Moreover, Paragraph 10 of the Hedmark Declaration asserts that clicking the Terms hyperlink "opens up a new window or tab containing the website's Terms and Conditions," and that "a user who clicked on that hyperlink would have retrieved the Terms and Conditions document," but it is not clear that the hyperlink leads consumers to Exhibit A Terms versus the Published Terms.  Thus, Plaintiff is left wondering whether any notice Plaintiff received was notice

22

of a document containing no delegation clause, a New York choice of law and a one-year limitations period per the Published Terms or something else.

## C.  The Appropriate Remedy Is Discovery, Followed by an Evidentiary Hearing if Disputes Remain

Where the record on formation is contested, the Second Circuit's instruction is clear: the Court proceeds summarily to trial on that issue, 9 U.S.C. § 4, and it is routine and appropriate to permit limited discovery first. *Guidotti v. Legal Helpers Debt Resolution*, LLC, 639 Fed.Appx. 824, 826-27 (3d Cir. 2013). Thus, if the Court is inclined to consider and grant Defendant's Motion, Plaintiff respectfully requests leave to take discovery narrowly targeted to formation, and proceed to trial on the following issues:

- Plaintiff's sessions on April 13 and 14, 2026, including all event, session, and device-level identifiers referenced at ¶ 4 of the Hedmark Declaration;

- the history of the Terms and Conditions, including every version in effect between April 1 and April 30, 2026, and the destination of every "Terms" hyperlink displayed on the pages Plaintiff visited;

- the source of the language quoted at pages 16-17 of Defendant's brief and to explain its omission from Exhibit A;

- the code, configuration, and A/B testing records governing the display of the disclosures depicted in the Hedmark Declaration, including any device- or viewport-conditional rendering;

- the provenance of the "recreation" at page 3 of Defendant's brief and why contemporaneous captures were produced for some interactions but not others; and

23

- a deposition of Ms. Hedmark, or of the appropriate Rule 30(b)(6) designee, on Defendant's data-capture systems and the maintenance and versioning of its Terms.

If, after that discovery, material disputes persist, the FAA entitles Plaintiff to a trial on the making of the agreement.

Accordingly, the Motion should be denied. In the alternative, the Court should defer ruling and permit the discovery set forth above, followed by an evidentiary hearing.

July 24, 2026

Respectfully submitted,

**REESE LLP**

*/s/ Carlos F. Ramirez*
Carlos F. Ramirez
*cramirez@reesellp.com*
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025-7524
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**SULTZER & LIPARI, PLLC**
Scott E. Silberfein
*silberfeins@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (800) 552-0265

*Counsel for Plaintiff
and the Proposed Class*