## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMELIA GOVEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUPPORT PETS LLC, a Florida Company,<br><br>Defendant. | Case No. 1:26-cv-04226 |

## DEFENDANT SUPPORT PETS, LLC'S REPLY MEMORANDUM
## IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

# Table of Contents

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT.............................................................................................................................3

    I.    A SINGLE SET OF TERMS GOVERNS PLAINTIFF'S CLAIMS...............................3

        A.    The Undisputed Timeline Confirms that the Govan Terms, not the Current Terms, Governs Plaintiff's Claims..............................................................................................3

        B.    The Language Of the Current Terms Confirm that the Govan Terms Govern Plaintiff's Claims.........................................................................................................4

    II.    THE WEBSITE PROVIDED REASONABLY CONSPICUOUS INQUIRY NOTICE AND PLAINTIFF MANIFESTED ASSENT ..............................................................6

    III.    SUPPORT PETS MET ITS BURDEN........................................................................7

    IV.    THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE.....................10

CONCLUSION .......................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Addit, LLC v. Hengesbach*,
341 So.3d 362 (Fla. 2d DCA 2022) ........................................................................................11

*Bell v. Royal Seas Cruises, Inc.*,
2020 U.S. Dist. LEXIS 85273 (S.D. Fla. May 13, 2020)...................................................7

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003).................................................................................................9

*Brea Sarasota, LLC v. Bickel*,
95 So.3d 1015 (Fla. 4th DCA 2012) ...................................................................................11

*Guidotti v. Legal Helpers Debt Resolutions, LLC,*
716 F.3d 764 (3d Cir. 2013)...............................................................................................10

*Kai Peng v. Uber Techs.*,
237 F.Supp.3d 36 (E.D.N.Y. 2017)....................................................................................11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66, 78-79 (2d Cir. 2017).....................................................................................7, 8

*Moton v. Maplebear, Inc.*,
2016 U.S. Dist. LEXIS 17643 (S.D.N.Y. Feb. 9, 2016) .................................................10

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022)..................................................................................................8, 9

**PRELIMINARY STATEMENT**

In opposition to Support Pets'[1] Motion, Plaintiff does not dispute the primary facts requiring arbitration: that she visited Support Pets' Website on several occasions, that she submitted email addresses and telephone numbers to the Website while completing a questionnaire and accessing its results, that she subsequently completed a purchase on the Website, and that while doing all of the foregoing activities on the Website she was presented at each turn with disclosures which indicated to her that her actions constituted agreement to the Website's Terms. Rather than disputing those facts, the Opposition is built almost exclusively upon attorney argument centering around a single discovery by her counsel – that the Website *currently* has a different version of terms and conditions than what was operative during Plaintiff's earlier interactions with the Website. From that observation, Plaintiff asks the Court to conclude that no enforceable agreement between her and Support Pets exists at all. For the following reasons, that argument fails.

First, the premise supporting Plaintiff's argument that Support Pets cannot itself identify which version of the Website Terms that Plaintiff actually assented to is incorrect. As set forth in the accompanying reply declaration of Nicole Hedmark ("Reply Decl."), the specific hyperlink embedded within the disclosures that Plaintiff encountered during her April 13 and April 14 visits to the Website (the screenshots reproduced in Hedmark's initial declaration) led, when clicked, to the terms and conditions which were annexed to Ms. Hedmark's initial declaration (the "Govan Terms"), not to the updated terms and conditions which were submitted by Plaintiff's counsel's declaration (the "Current Terms"), which were pulled from the Website more than 3 months after

---

[1] Support Pets incorporates all capitalized terms as defined in its Motion.

1

Plaintiff's interactions with the Website. Plaintiff has identified a different document, reached through a different hyperlink, and has not demonstrated any connection to that document or hyperlink to the transactions which comprised her agreement to the Website Terms. Her speculation is insufficient to defeat Support Pets' Motion.

Second, notwithstanding the primary fallacy of Plaintiff's argument concerning differing versions of the terms, the argument is no less flawed because it does not matter which version of the terms govern Plaintiff's transactions because *both* versions require her to arbitrate her claims against Support Pets.  The differences between the two sets of terms identified by Plaintiff (the forum, the rules concerning administration of the arbitration, pre-suit notice mechanisms) all represent differences in how the arbitration will proceed, not whether the arbitration will proceed in the first instance. To the extent that any uncertainty exists as to the precise contours of the parties' arbitration agreement, that uncertainty is a question of contract interpretation that is for the arbitrator to resolve, not a basis to resist arbitration and maintain the litigation in this Court.

Finally, Plaintiff has not submitted a single item of relevant evidence, let alone a declaration in her own name, disputing that she personally saw, clicked, or experienced while visiting Support Pets' Website.  A natural result of the fact that her entire complaint is based on the premise that she made a purchase from the Website is that she does not and cannot dispute that she visited the website, that she submitted her email address, telephone number, and payment information to the website, or that she saw the disclosures reproduced in the original Hedmark Declaration which all users must be presented with in the course of their completion of the questionnaire that precedes consummating the purchase. Rather, the Opposition chiefly relies on speculation about what Plaintiff's device *might* have displayed, what source code (which was not required to produce in order to competently testify as to what displays were presented to Plaintiff)

2

was absent, but which *might* reveal *something*.  This is not the stuff of genuine issues of material fact.  It should be recognized for what it is though: supposition angling for a fishing expedition.

For these reasons, as further detailed below, the Court should grant Support Pets' Motion and compel Plaintiff's claims to arbitration.

## ARGUMENT

## I.  A SINGLE SET OF TERMS GOVERNS PLAINTIFF'S CLAIMS

The gravamen of Plaintiff's opposition is that the existence of a separate set of terms and conditions currently published on Support Pets' Website creates such uncertainty regarding contract formation that the Court cannot permissibly compel arbitration.  But the opposition argument fails for the following reasons.

### A.  The Undisputed Timeline Confirms that the Govan Terms, not the Current Terms, Governs Plaintiff's Claims

Plaintiff's suggestion that Support Pets cannot identify which terms and conditions governed her interactions with the Website, and transaction consummated thereof, is factually incorrect.  The Reply Declaration of Nicole Hedmark, submitted herewith, confirms that the Govan Terms were the version of the Website's terms and conditions which were operative and in effect during Plaintiff's April 13 and 14 visits to the Website.  For Plaintiff's part, she does not dispute that she visited the Website on those dates, nor that she submitted her email address, telephone number, and payment information on those dates, nor that she was presented with the disclosures represented in the images embedded to the initial Hedmark Declaration at the time that she interacted with the Website and submitted such personally identifiable information thereon.

As explained in the Reply Declaration of Nicole Hedmark, Support Pets revised its Website terms and conditions and published those revision on the Website beginning on June 17, 2026,

3

before Plaintiff's counsel retrieved the Current Terms some three months after Plaintiff's interactions with the Website. The Current Terms are simply a later, superseding version, currently in effect for prospective Website users. Contrary to Plaintiff's supposition, they are not a second, contemporaneously operative agreement that existed alongside the Govan Terms at the time that Plaintiff transacted with the Website.

It is a routine act of business to revise and update the terms and conditions governing their websites. That Support Pets did so subsequent to Plaintiff's interactions on the Website does not create any ambiguity or issue of fact as to which version of the Terms governed her interactions. Support Pets has provided sworn testimony concerning which version of the terms and conditions were operative at the time of Plaintiff's interactions, and Plaintiff's counsel's speculative representations concerning the Current Terms, which Plaintiff herself does not say she has ever seen, does nothing to alter that reality.

**B. The Language Of the Current Terms Confirm that the Govan Terms Govern Plaintiff's Claims**

Any lingering doubt on this issue is resolved by the Current Terms submitted by Plaintiff's counsel, as that set of terms and conditions expressly addresses what happens when Support Pets updates the Terms after a user has already transacted with the Website, stating as follows:

> We may amend the Agreement from time to time in our sole discretion, without specific notice to you; provided, however, that (a) any amendment or modification to the arbitration provisions, prohibition on class action provisions or any other provisions applicable to dispute resolution . . .shall not apply to any disputes incurred prior to the applicable amendment or modification."

Ramirez Decl., Ex A. § 1.

Thus, by the express terms of the document which Plaintiff suggests might govern, disputes

which arise from conduct and/or transactions that predate subsequent amendments or modifications to the terms and conditions (such as Plaintiff's dispute) continue to be governed by dispute-resolution provisions in effect at the time of the underlying conduct and/or transaction: here, the Govan Terms.

Plaintiff is not entitled to have it both ways.  Either the Current Terms govern in their entirety, in which case the above-quoted provision concerning retroactivity confirms that the dispute resolution provision contained in the Govan Terms applies to Plaintiff's claims, or the Govan Terms govern for the simple reason that they were operative set of terms and conditions at the time of Plaintiff's interactions with and transaction on the Website, as the undisputed timeline set forth in the Hedmark Declarations otherwise established.  In either event, under either application, it is the arbitration agreement contained in the Govan Terms which controls the determination of Support Pets' Motion, including that agreement's delegation clause and class action waiver provision.

Plaintiff's opposition makes much of a block quotation at pages 16 and 17 of Support Pets' Motion, arguing that because it is taken from the Current Terms, that is indicative of which set of terms and conditions applies.  However, it was little more than a drafting error which led to that quotation's inclusion in the supporting memorandum of law. Support Pets does not otherwise rely on that quotation in any meaningful way, nor does it not affect the outcome of its Motion.  The document actually annexed as an exhibit to Support Pets' Motion (and which is quoted from extensively elsewhere in the supporting memorandum of law) contains the necessary language concerning scope of disputes that requires arbitration of Plaintiff's claims: "any and all disputes, as defined above, whether presently in existence or based on acts or omissions in the past or in the future, will be resolved exclusively and finally by binding arbitration rather than in court."

5

Hedmark Decl., Ex. A.  Similarly, the Govan Terms also contain its own delegation clause which was accurately quoted in the memorandum: "All issues shall be for the arbitrator to decide, including the scope of this Provision." *Id*.

The quotation error identified by Plaintiff, while regrettable, is immaterial to disposition of Support Pets' Motion.  The Motion consistently relied upon the Govan Terms, extensively quoted from it, and as confirmed by the Hedmark Declarations was always the operative agreement.  It is sufficient, on its own, to compel arbitration.

## II. THE WEBSITE PROVIDED REASONABLY CONSPICUOUS INQUIRY NOTICE AND PLAINTIFF MANIFESTED ASSENT

Plaintiff's arguments concerning notice are not compelling.  First, she contends that the landing-page screenshots associated with her April 13 and April 14 Website visits do not, on their face, display a hyperlink to the Govan Terms.  But the Hedmark Declarations speaks to the fact that the imagines contain disclosures indicating some version of "by submitting you are agreeing to the terms of the website" and that terms served as a hyperlink. Plaintiff's characterization that "neither image depicts any means . . . by which the user could actually access those terms," simply overlooks that the underlined word within the disclosure is itself the hyperlink – the standard design convention by which website disclosures embed hyperlinks within disclosure text rather than a freestanding, separately labeled link.

Plaintiff's argument regarding the telephone-number submission form screen fares no better.  Plaintiff describes the reference to the Terms as "embedded in the small block of text on the page."  Nevertheless, the disclosure is positioned directly above the only call-to-action button on the screen, in a design specifically intended to ensure that a user cannot advance through the questionnaire without passing directly over the disclosure and the underlined hyperlink to the

6

Govan Terms.   Courts applying either Florida or New York law routinely enforce online agreements where notice of the governing terms is placed immediately adjacent to the button the user must click to proceed, which is the precise design used by Support Pets' Website.  *See, e.g., Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017); *Bell v. Royal Seas Cruises, Inc.*, 2020 U.S. Dist. LEXIS 85273, at *3 (S.D. Fla. May 13, 2020).

Plaintiff's argument concerning the verbiage of the call-to-action buttons is similarly unavailing.  Specifically, she disputes that buttons which say, "Finish & Qualify Now," "Calculate My Results," or "Next" can, as a matter of law, indicate manifestation of assent, as opposed to a button which says, "I agree."  But the relevant inquiry does not collapse into a simple, formulaic search for the word "agree," it is whether the overall design of the webpage that would give rise to an agreement, including the proximity of the relevant disclosures themselves, would place a reasonably prudent user on inquiry notice that a particular action taken would constitute their assent.  *See, Meyer*, 868 F.3d at 75-76.

## III.  SUPPORT PETS MET ITS BURDEN

Plaintiff argues that the screenshots submitted in the Hedmark Declaration are insufficient because they are "recreations," whereas Plaintiff contends they should have been contemporaneous captures.  She also complains that the screenshots were submitted in lieu of separate categories of data, such as server logs, HTMLs, or other data, which Plaintiff surmises could have also been provided in support of Support Pets' Motion.  Notably, Plaintiff cites to no authority for the proposition that a business records-based declaration describing the content and design of webpages that a plaintiff encountered that is submitted under penalty of perjury by a corporate officer with personal knowledge of the facts asserted therein is categorically insufficient in the absence of the alternative records Plaintiff suggests could have been submitted.  To the

contrary, however, the Second Circuit has indicated that screenshots of the webpage(s) used to engage with the consumer is an appropriate evidentiary vehicle for establishing an online agreement. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-105 (2d Cir. 2022).

The original Hedmark Declaration explained that based on Support Pets' ordinary-course business records, the screenshots embedded into the declaration accurately recreate what was recorded in Support Pets' database concerning Plaintiff's specific April 2026 interactions with the Website, based upon the device-level and session-level identifiers contemporaneously generated and recorded at the time of each of Plaintiff's visits and interactions. Plaintiff has not identified in any way which of those recreations are inaccurate, instead simply speculating that they might be. That speculation, unaccompanied by any factual account that could competently serve as a competing dispute of the basic facts concerning her Website interactions, does not create any genuine dispute of fact. *See Meyer*, 868 F.3d at 76-77 (crediting business records-based declaration describing the website interface that plaintiff encountered). Moreover, to the extent that there was any remaining ambiguity regarding the source or legitimacy of the screenshots, it is addressed and clarified in the supplemental Hedmark Declaration at paragraph 6.

The evidence submitted by Support Pets makes a prima facie showing of the existence of an arbitration agreement. On a motion to compel, under such circumstances, the burden shifts to the party resisting arbitration to identify specific facts (not mere argument) which creates a genuine issue requiring trial. *Zachman*, 49 F.4th at 101-102. Plaintiff's opposition does not identify a single fact of any kind which creates a genuine issue for trial. She did not submit her own declaration which may have denied visiting the Website on April 13 or April 14, 2026. She has not denied seeing the disclosures in the images embedded to the original Hedmark Declaration that

referenced the Website terms.  She has not alleged that her device displayed anything different from those images, nor has she alleged that she attempted to opt-out of the terms' dispute resolution provisions. The one person who could have offered a first-hand account refuting any of the evidence submitted by Support Pets offered the Court nothing.

In the absence of any such evidence, the Opposition consists entirely of attorney description of a webpage visited in July 2026, months after the events at issue, and argument related thereto.  Evidence of what exists on Support Pets' Website today, however, is not evidence of what Plaintiff personally experienced in April 2026.  Where, as here, the party with personal knowledge of the events at issue is silent and speaks solely through her counsel, there is no genuine dispute of material fact.  The Federal Arbitration Act's summary judgment-like standard is not defeated through argument, though.  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). It requires the resisting party to identify specific facts, not invite the Court to speculate about alternative sets of facts that discovery *might* reveal.

For this reason, Plaintiff's request for discovery and an evidentiary hearing should be rejected.  Courts permit limited discovery into the validity of an arbitration agreement only when the party opposing arbitration "come[s] forth with reliable evidence that ss more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement." *Moton v. Maplebear, Inc.*, 2016 U.S. Dist. LEXIS 17643, at *11-12 (S.D.N.Y. Feb. 9, 2016) (citing *Guidotti v. Legal Helpers Debt Resolutions, LLC,* 716 F.3d 764, 774 (3d Cir. 2013)). Plaintiff has done no such thing here.  To the contrary, every item on the discovery wish list is directed at confirming or disproving facts that Support Pets has already established through the Hedmark Declarations, which Plaintiff could have refuted through her own declaration but did not.

The FAA's strong policy in favor of expeditious resolution of arbitrability disputes would

be fundamentally undermined, if not defeated, if a plaintiff could avoid arbitration by demanding discovery related to the defendant's website architecture without first identifying any actual, fact-specific basis to dispute Support Pets' evidence that she visited the Website on the dates identified. Plaintiff has failed to do so here, and discovery followed by an evidentiary trial would be unwarranted as a result.

## IV.  THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE

Plaintiff's contention that the arbitration agreement is unconscionable is set forth in a single contention: that the opt-out window *might* function different depending upon which version of the terms and conditions governs, and that the thirty-day opt window may have expired before Plaintiff made her purchase pursuant to the Current Terms.  First, this is purely speculation.  Second, in the Hedmark Declarations concretely establish that the Current Terms were not in effect at the time of Plaintiff's interactions with the Website.  Finally, Plaintiff has never alleged that she ever attempted to exercise an opt-out right and was denied an opportunity to do so such that she was in any way prejudiced by purportedly differing opt-out trigger deadlines.  The post-hoc hypothetical posed by counsel is insufficient to support an unconscionability challenge, a challenge which must otherwise be *proven* in order to succeed. *Addit, LLC v. Hengesbach*, 341 So.3d 362, 366 (Fla. 2d DCA 2022).

It must be further noted that both versions of the terms and conditions provide an opt-out mechanism, which Plaintiff does not dispute.  That opt-out feature is one that courts repeatedly identify as dispositive in rejecting procedural unconscionability challenges to arbitration agreements. *Kai Peng v. Uber Techs.*, 237 F.Supp.3d 36, 55-56 (E.D.N.Y. 2017); *Brea Sarasota, LLC v. Bickel*, 95 So.3d 1015, 1017 (Fla. 4th DCA 2012).

Because Plaintiff has not and cannot show that she lacked a meaningful opportunity to opt

out from the dispute resolution provisions, her unconscionability argument fails regardless of which version of the terms and conditions governs.

**CONCLUSION**

For the foregoing reasons, Support Pets respectfully requests that the Court issue an order granting the Motion to Compel Arbitration, and compelling arbitration of and dismissing without prejudice Plaintiff's Class Action Complaint and the claims asserted against Defendant therein or, in the alternative, staying those claims pending completion of arbitration.

Dated: July 31, 2026

Respectfully submitted,

**KLEIN MOYNIHAN TURCO LLP**

By: */s/ Neil E. Asnen*
Neil E. Asnen
450 7th Avenue – 40th Floor
New York, NY 10123
(212) 246-0900
nasnen@kleinmoynihan.com

*Attorneys for Support Pets, LLC*

**CERTIFICATE OF COMPLIANCE**

I certify that Defendant's Reply Memorandum of Law in Further Support of Its Motion to Compel Arbitration complies with LR 7.1(c) and contains 3,121 words, inclusive of all text, the caption, headings, footnotes, and quotations. In making the within certification, I used the Microsoft Word software, version 2604.

*/s/ Neil E. Asnen*
Neil E. Asnen

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 31, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ *Neil E. Asnen*
Neil E. Asnen