**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMELIA GOVEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUPPORT PETS LLC, a Florida Company,<br><br>Defendant. | Case No. 1:26-cv-04226-AT-SLC |

**DEFENDANT SUPPORT PETS, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

## PRELIMINARY STATEMENT

Defendant Support Pets, LLC ("Defendant" or "Support Pets") respectfully submits this memorandum of law in opposition to Plaintiff Amelia Goven's Motion for Reconsideration (ECF No. 26; "Plaintiff's Motion") of the Court's October 14, 2026 Opinion and Order (ECF No. 25; the "Order") granting Support Pets' Motion to Compel Arbitration (ECF Nos. 12-14), compelling Plaintiff to arbitrate her claims against Support Pets, and staying this action pending arbitration.

Plaintiff's Motion must be denied because it does not do what is required of a motion for reconsideration. It does not identify any controlling authority that the Court overlooked. Instead, it repeats the arguments that Plaintiff made in her opposition to Support Pets' Motion to Compel Arbitration, and which the Court rejected. Specifically, those arguments are that the First and Second disclosures lacked a hyperlink, that the telephone number disclosure was "devoted exclusively" to text messaging, that the call-to-action buttons themselves did not reference agreement or acceptance, and that *Vitacost.com, Inc. v. McCants* requires a different result. However, each of the arguments was briefed before, and the Court rejected them in granting Defendant's Motion. In fact, the Court expressly relied on two of the decisions to which Plaintiff's Motion cites: *Tejon v. Zeus Networks, LLC*, and *Martin v. Lens.com, Inc.* (Order at 9-10, 13-14). Mere disagreement with how the Court weighed those arguments is not a basis for reconsideration.

The only genuinely new thing in Plaintiff's Motion is a theory which Plaintiff never raised previously – that the Second and Third Disclosures cannot bind her because she saw them after her purchase. A motion for reconsideration is not a vehicle for new theories, however. Beyond that though, the argument is simply wrong. Not only did the First Disclosure precede her purchase, but the arbitration provision she accepted expressly covers "any and all disputes . . . whether presently in existence or based on acts or omissions in the past." Under both Second Circuit and Florida law,

an arbitration agreement reaches earlier-arising claims when, as here, its language says so. In any event, whether the Arbitration Provision reaches a dispute over a particular purchase is a question of scope, a question which the Court held the parties clearly and unmistakably delegated to the Arbitrator. Notably, that portion of the Court's holding is not one that Plaintiff challenges.

Moreover, the "new" authorities which Plaintiff introduces in her Motion all predate the filing of her opposition to Support Pets' Motion to Compel Arbitration and each involves either a website or notices materially distinguishable from Support Pets'. Plaintiff's Motion must be denied accordingly.

## LEGAL STANDARD

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, which might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The generally recognized grounds permitting reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal citation omitted). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation and citation omitted).

Moreover, Local Rule 6.3 requires the movant seeking reconsideration to file a memorandum setting out the matters or controlling decisions that the movant believes the Court overlooked.

## ARGUMENT

### I. PLAINTIFF'S MOTION IDENTIFIES NOTHING THE COURT OVERLOOKED AND SIMPLY RELITIGATES ARGUMENTS ALREADY REJECTED

Plaintiff's Motion does not contend that the law changed, that new evidence emerged subsequent to the completion of briefing of Defendant's Motion to Compel Arbitration, or that the Court failed to consider a particular argument that she made. Rather, she contends only that the Court reached a conclusion which she deems to be incorrect. That is a textbook example of "relitigating old issues." *Analytical Surveys*, 684 F.3d at 52.

Plaintiff's first argument is that the First and Second Disclosures "fail to provide a hyperlink to the Terms." She made this same argument in opposition to Defendant's Motion to Compel Arbitration, contending that the April 13 and April 14 pages "do not, on their face, display any hyperlink" and therefore could not provide inquiry notice under Florida law. ECF No. 15 at p. 15-16. With this argument before it, and with access to the screenshots of the Disclosures, the Court recited the text of each disclosure, noted that the Third Disclosure "contained the hyperlinked Terms," and found assent based on the Disclosures as a whole. *See* Order at p. 13-14. There is no basis for reconsideration to be found in Plaintiff's repetition of her prior points that she reframes as a *per se* rule.

Plaintiff next argues that the Third Disclosure was "devoted exclusively to obtaining consent . . . to receive marketing text messages." ECF No. 26 at p.1. Again, her opposition to Defendant's Motion to Compel Arbitration said the same thing: the reference to the Terms was "embedded in a paragraph devoted almost entirely to SMS marketing disclosures." *See* ECF No. 15 at p. 16. The Court, however, quoted the Third Disclosure *in full* (Order at p.3-4) and nonetheless held that its hyperlink gave Plaintiff the opportunity to read the Terms and decline to

proceed. *Id*. at p. 13.

Plaintiff also argues that the "Finish and Qualify Now," "Calculate my results," and "Next" buttons could not provide notice. *See* ECF No. 26 at p. 5. This too was an argument she made in opposition to Defendant's Motion to Compel Arbitration about those same buttons. *See* ECF No. 15 at p. 17 (arguing that "[n]one references acceptance, agreement, consent to contractual terms or similar language."). Support Pets responded to this argument, *see* ECF No. 16 at p.7, and the Court, which identified each button by name, ruled on the issue. *See* Order at p. 3, 13.

Finally, Plaintiff faults the Court for relying on her submission of personal information across multiple areas of the Website, asserting that "the record is devoid of any such evidence" that she received notice. *See* ECF No. 26 at p. 6. This is wrong. The Record is not devoid of such evidence; it contains sworn testimony, based on business records and screenshots of exactly what Plaintiff saw and did on Support Pets' website. *See* ECF Nos. 13, 17. The Court found that Plaintiff did not dispute either those interactions or that "she was presented with the Disclosures before entering her personal identifying information and clicking the action buttons." Order at p.4. What is really lacking from the record is any contrary evidence from Plaintiff. She submitted no declaration denying that she saw the Disclosures or that she submitted the information. Having failed to create a genuine dispute before the Order was issued, she cannot do so with attorney argument now.

## II. THE AUTHORITIES PLAINTIFF CITES WERE EITHER APPLIED BY THE COURT OR DO NOT SUPPORT HER

Plaintiff relies principally on *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322 (11th Cir. 2026); *Valiente v. NexGen Global, LLC*, 2025 U.S. App. LEXIS 294465 (11th Cir. Nov. 10, 2025); *Lopez v. Herro*, 2025 U.S. Dist. LEXIS 234612 (S.D. Fla. Dec. 2, 2025); and *Eglin Federal Credit*

*Union v. Baird*, 400 So.3d 643 (Fla. 1st DCA Aug. 28, 2024), *review granted* No. SC2025-0221 (Fla. Sept. 4, 2025). Each of these cases, however, was decided before Plaintiff filed her opposition on July 24, 2026. Authorities available to Plaintiff before she briefed Defendant's Motion cannot be "intervening." *See Analytical Surveys*, 684 F.3d at 52.

*Tejon* is the only Eleventh Circuit decision which Plaintiff cites that is published, and it is one authority the Court could not have overlooked because the Court explicitly adopted its statement of Florida law as the governing framework applicable to the formation question. Order at p. 9. Plaintiff does not contend that the Court missed *Tejon*, only that it misapplied it. But that is a request for a "rehearing on the merits," not for reconsideration. *Analytical Surveys*, 684 F.3d at 52.

The contention is also wrong. The proposition that Plaintiff attributes to *Tejon* - that the enforcing party "must prominently display the hyperlink" (Motion at p.2) – describes what a pure browsewrap agreement requires. In *Tejon*, the only notice was a small, gray "Terms of Service" link between two large red subscription buttons, amid competing text, and nothing told users that subscribing meant accepting any terms. *Tejon*, 174 F.4th at 1324. The Eleventh Circuit emphasized that the page lacked explicit textual notice that a given action would constitute acceptance. *Id.* at 1327. Support Pets' Website, however, provided exactly what *Tejon* found to be missing. The First and Second Disclosures told Plaintiff in plain words that "[b]y submitting you are agreeing to the terms of the website," and the Third Disclosure placed an underlined hyperlink to the Terms in dark text directly above the only button on the page. ECF No. 13 ¶¶ 8-10; ECF No. 13-1; Order at pp. 3-4. That is why the Court found a hybridwrap agreement rather than a browsewrap agreement. Order at 9-10, 13. Read correctly, then, *Tejon* <u>confirms</u> the correctness of the Order.

So does *Martin*, which Plaintiff's Motion also cites, and on which the Court also relied.

Order at p.9-10, 13-14. *Martin* enforced a notice which stated that "By continuing you agree to our Terms of Use & Privacy Policy" beneath the button the user clicked, even though the user was "not required to click the Terms of Use hyperlink." *Martin*, 2024 WL 4826048, at *5-7. The Second Circuit applied the same principle: a user informed that an action constitutes agreement is bound "whether he clicked on the hyperlink or not." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79-80 (2d Cir. 2017).

*Valiente,* for its part, does not even qualify as precedent under the Eleventh Circuit's own rules. *See* 11th Cir. R. 36-2(e)(2) ("While unpublished dispositions may be cited to the court in accordance with FRAP 32.1 and Circuit Rule 32.1(b)(1), a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."). To that end, a decision that does not bind cannot be "controlling" here. *Valiente* is also inapposite – the "Terms of Use" hyperlink was "buried inconspicuously" at the "very bottom of a busy website" in "white coloring and a small font." *Valiente,* 2025 U.S. App. LEXIS 294465, at *7-8.

Neither *Lopez* nor *Eglin* are any more availing. In *Lopez*, the only reference was an "OUR POLICY" link located at the bottom of the screen absent any notice. Nothing told a consumer that submitting her information meant agreeing to any terms. *Lopez,* 2025 U.S. Dist. LEXIS 234612, at *5. And *Eglin* involved an existing account holder who received only a hyperlink "buried in a routine monthly account statement email" that "said nothing about Eglin changing the terms of the agreement." *Eglin*, 400 So.3d at 648. In contrast, Plaintiff submitted information to webpages telling her that doing so constituted an agreement to the site terms and the Third Disclosure linked directly to those terms. Moreover, *Eglin* itself is not even settled law, as the Florida Supreme Court has granted review. In any event, a decision of an intermediate state appellate court is "a datum for ascertaining state law," entitled to weight but is not itself controlling. *See West v. Am. Tel. &*

*Tel. Co.*, 311 U.S. 223, 237 (1940). Notably, however, on the only relevant question to which *Eglin* speaks directly – whether an arbitration clause may reach earlier-accrued claims – it supports Support Pets. *Eglin*, 400 So.3d at 649.

In short, the authorities Plaintiff points to amount to one appellate decision with any real weight on Florida law, and the Court applied it in the Order. The rest are either not binding or not germane. More to the point, however, none is a controlling decision which the Court overlooked. *Shrader*, 70 F.3d at 257.

## III. PLAINTIFF'S "POST-SALE" ARGUMENT IS NEW – AND THUS IMPROPER – BUT ALSO WRONG

In opposition to Defendant's Motion to Compel Arbitration, Plaintiff never argued that any Disclosure was ineffective because it followed her purchase. And because reconsideration is not an opportunity to "present[] the case under new theories," that alone is cause enough to deny Plaintiff's Motion. *Analytical Surveys*, 684 F.3d at 52. Plaintiff forfeited this argument by not raising it before the Court ruled.

Independently, Plaintiff's argument is fundamentally one regarding the scope of the arbitration agreement and whether it should apply to a purchase completed before the Third Disclosure, not whether an arbitration agreement exists. But the Court held that scope is an issue which the parties clearly and unmistakably delegated to the arbitrator, specifically highlighting the agreement's language that "[a]ll issues shall be for the arbitrator to decide, including the scope of this Provision." *Order* at 14. Plaintiff's "post-sale" theory is for the arbitrator, not the Court.

Further, for at least three distinct reasons the argument also simply fails on its own merits. *First*, the argument has a fundamental factual flaw. The First Disclosure was presented to Plaintiff on April 13, 2026, approximately 30 minutes before Plaintiff's purchase. *Id.* at 3. Thus, Plaintiff's

"post-sale" theory does not reach the First Disclosure at all.

*Second*, the arbitration agreement to which Plaintiff assented expressly applies to past conduct. It covers "any and all disputes, as defined above, whether presently in existence or based on acts or omissions in the past or in the future." *Id.* at 4. The Second Circuit has held that "broad arbitration provisions that contain no express temporal limitation can apply to claims that arose prior to the execution of the arbitration agreement." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) (*citing Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211-12 (2d Cir. 1972)). The arbitration agreement is not even silent as to time; it expressly speaks to its coverage of past acts. Plaintiff's own authority applies the same rule under Florida law. *Eglin* held that an arbitration provision applies to previously accrued claims "when the language of the agreement clearly demonstrates an intent for retroactive application." *Eglin,* 400 So.3d at 649. The clause in *Eglin* failed that test however because it did "not unequivocally state that it applies retroactively." *Id.* However, the arbitration agreement to which Plaintiff assented does.

Third, neither *Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) nor *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012) helps Plaintiff. Both involved terms delivered via email after either enrollment or purchase that the consumer was never asked to act upon. *See Starke*, 913 F.3d at 289-97; *Schnabel*, 697 F.3d at 123-27. Plaintiff's experience is easily distinguishable. She was not sent terms "later by email." Rather, she returned to the Website and submitted information on pages telling her that doing so constituted agreement to the Website's terms. That is typical contract formation conduct.

## IV. PLAINTIFF'S REMAINING ARGUMENTS REQUEST A REHEARING ON THE MERITS

Plaintiff "agrees that the Disclosures use dark font colors" but contends that this "is not enough to carry the day" because courts "accord the most weight" to hyperlinks. ECF No. 26 at p. 4-5. However, a request for the Court to reweigh the same design factors is an improper request for "a rehearing on the merits." *Analytical Surveys*, 684 F.3d at 52.

Plaintiff also attacks the Website on a disclosure-by-disclosure basis that ignores the foundation of the Order. The Court did not treat any Disclosure in isolation. It held that Plaintiff formed an agreement "when, on April 13, 2026 and April 14, 2026, [she] entered her personal identifiable information into the Website's form fields after being presented with the Disclosures." Order at p. 14. Considering the whole user interface and context in this way is how courts assess whether terms were "reasonably communicated to the user." *Meyer*, 868 F.3d at 76 (cited in Order at p.9, n.6). Plaintiff's focus on the First and Second Disclosures ignores that the Third Disclosure, which she concedes contains a hyperlink, linked to the very terms the earlier Disclosures told her she was accepting.

Finally, Plaintiff also asks the Court to allow the parties "to proceed with discovery." ECF No. 26 at p. 6. Plaintiff made the same request twice before - once in opposing Defendant's Motion to Compel Arbitration, ECF No. 15 at p.20, and a second time in opposing a stay of discovery. ECF No. 21. The Court rejected that request. ECF No. 23. Plaintiff offers no reason to revisit either ruling. The action is now stayed pending arbitration. ECF No. 25 at p. 15.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration must be denied.

Dated: November 10, 2026

Respectfully submitted,

**KLEIN MOYNIHAN TURCO LLP**

By: *<u>/s/ Neil E. Asnen</u>*
Neil E. Asnen
450 7th Avenue – 40th Floor
New York, NY 10123
(212) 246-0900
nasnen@kleinmoynihan.com

*Attorneys for Support Pets, LLC*

## CERTIFICATE OF COMPLIANCE

I certify that Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration complies with LR 6.3 and contains 2,902 words, inclusive of all text, the caption, headings, footnotes, and quotations. In making the within certification, I used the Microsoft Word software, version 2604.

/s/ *Neil E. Asnen*
Neil E. Asnen

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 10, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ *Neil E. Asnen*
Neil E. Asnen